Argued November 3, 1976, affirmed March 31, 1977

# COMINI, *Appellant,*
*v.*
# UNION OIL COMPANY OF CALIFORNIA,
*Respondent.*
## (No. 410-790, SC 24316)
562 P2d 175

Dennis H. Elliott, Portland, argued the cause for appellant. With him on the briefs were John J. Haugh, and O'Connell, Goyak & Haugh, P. C., Portland.

James E. Griffin, Portland, argued the cause for respondent. With him on the brief was Williams, Stark, Hiefield, Norville & Griffin, P. C., Portland.

Before McAllister,* Presiding Justice, and Holman, Tongue, Howell, Bryson, and Bohannon, Justices.

HOLMAN, J.

---

*McAllister, J., retired December 31, 1976.

## HOLMAN, J.

This is an action arising out of the sale of plaintiff's interests as a bulk petroleum distributor. Plaintiff contends that defendant, Union Oil Company, whose distributorship plaintiff held, interfered with the sale of his interests to third parties to plaintiff's damage. Plaintiff appeals from a directed verdict for defendant.

The facts will be viewed as favorably to plaintiff as possible, as is proper on appeal from an order granting defendant a directed verdict. Plaintiff had been defendant's bulk distributor at The Dalles for several years when the opportunity to manage a state liquor store presented itself and he desired to sell his interests. His contract with defendant provided that the distributorship could be transferred only with the consent of defendant. He entered into a written contract with one Rosenow to sell his interests for $17,000, subject to defendant's approval. Rosenow had no prior experience with petroleum products and was not approved.

Prior to the disapproval of Rosenow, plaintiff entered into an oral agreement with one Woodward, an experienced petroleum products distributor, for the sale of his interests to Woodward at the same price of $17,000, subject to defendant's disapproval of Rosenow and its approval of Woodward. Woodward was not approved because defendant decided to consolidate under one owner plaintiff's distributorship with a distributorship owned by one Byars in the neighboring locality of Wasco. Thereupon defendant informed plaintiff that "you will sell to Bob Byars at his price, the money he can live with," and, "if not, you are out in seven days." The contract between plaintiff and defendant provided that either party could cancel the agreement by seven days' written notice. Thereafter, plaintiff sold to Byars at Byars' price of $10,000.

The parties originally briefed and presented the case to this court as one of defendant's tortious interference with plaintiff's contracts with Rosenow

and Woodward. Plaintiff's position was complicated by its contract with defendant which provides that the distributorship may be transferred only with the consent of defendant. However, this does not necessarily mean that defendant can arbitrarily refuse to approve a sale by plaintiff where no legitimate business interests of consequence to defendant are to be served by such refusal. In every contract there is an implied covenant of good faith and fair dealing. *Perkins v. Standard Oil Co.*, 235 Or 7, 16, 383 P2d 107, 383 P2d 1002 (1963).

A privilege to interfere with another's contract with a third party may be granted by consent. Section 890 of 4 Restatement of the Law of Torts recognizes that liability for an otherwise tortious act (including interference with a contract) may be avoided by privilege:

> "A person who otherwise would be liabile for a tort is not liable where he acts in pursuance of and within the limits of a privilege of his own or of a delegable privilege of another."

Comment *b.* under the section recognizes that such privilege may result from assent. It states, in part:

> "A privilege created by assent may be, and ordinarily is, *conditioned upon the existence of a specified purpose of the actor at the time assent is given and at the time the privilege is exercised.* If an act is done with a purpose inconsistent with that for which the privilege is given, the act is not privileged. This is true either because the assent was obtained by fraud or because the act is not within the specified condition. * * *." (Emphasis ours.)

It may be reasonably assumed that, at the time the parties gave their contractual consent to the termination provision, they contemplated that either party was privileged to invoke the right to cancel in order to protect its own legitimate business interests.

Defendant had a legitimate business interest in having an experienced distributor and was therefore privileged to reject Rosenow. It also had a legitimate business interest in consolidating two of its adjoining distributorships under one owner and was therefore

privileged to reject Woodward, even though Woodward was a qualified distributor. There was nothing to indicate that consolidation was a subterfuge to accomplish other than a legitimate business purpose. It was plaintiff, not defendant, who initiated a change in ownership. The distributorship was obviously small.[1] For cases which discuss the legitimate interests of one who is in the position of defendant, *see Frank Coulson, Inc.—Buick v. General Motors Corp.,* 488 F2d 202, 207 (5th Cir 1974), and *Pierce Ford Sales, Inc. v. Ford Motor Company,* 299 F2d 425, 429 (2d Cir 1962). For these reasons we conclude that defendant was privileged to disapprove the transfer both to Rosenow and to Woodward. This was also the conclusion of the trial judge.

Because we were concerned about possible interference by defendant with plaintiff's reasonable economic expectancy to contract independently as to price with Byars (*i.e.,* defendant's threat to cancel the contract with plaintiff on seven days' notice unless plaintiff sold to Byars at Byars' price), we requested additional memoranda on this issue as well as on whether the pleadings were broad enough to allow us to consider it. We have come to the conclusion that our consideration

---

[1] Plaintiff introduced into evidence an intracorporate communication issued by defendant which contained, in part, the past history of corporate plans for consolidation:

"Mr. James Comini, Distributor in The Dalles, has given us written notice of his intention to cancel his distributorship. * * *.

"* * * * *.

"The Dalles is one of the marginal operations falling under the $5,000 annual net minimums established by Home Office. It has long been our plan to consolidate The Dalles, Wasco and Grass Valley. The opportune time is here and I feel we should proceed accordingly.

"Mr. Byars, our Distributor in Wasco, would like to have The Dalles plant. Some time back, we asked Mr. Comini to take all of these plants, however, he could not work out a mutual agreement as to price of the equipment with Mr. Byars. We are quite sure there may be some problems when Mr. Comini and Mr. Byars again negotiate as to the true value of the equipment. Should they mutually agree and the Credit Department endorses this consolidation, we plan to make the change on June 30, 1973.

"* * * * *."

of the issue is foreclosed by plaintiff's amended complaint, upon which the case was tried. This pleading was, in relevant part:

"V

"Between May 30, 1973, and June 5, 1973, defendant interfered *with plaintiff's agreement with Glen Rosenow and Jim Woodward by:*

"(a) Informing Glen Rosenow he would not become defendant's distributor at The Dalles, Oregon.

"(b) Informing Jim Woodward he would not become defendant's distributor at The Dalles, Oregon.

"(c) Informing plaintiff that *he had to sell his business to Bob Byars at a price agreeable to Byars,* and that if plaintiff failed to do so, defendant would terminate his consignment contract in seven days.

"VI

"As a result of the interference set forth above on the part of the defendant, *plaintiff was unable to sell his business to Glen Rosenow or Jim Woodward* for the agreed price of $17,000, *but was forced to sell his business to Bob Byars for a total price of $10,000.*" (Emphasis ours.)

It is our conclusion that plaintiff's pleadings limited the issue to defendant's interference with the Rosenow and Woodward agreements and were not broad enough for us to deem the issue to be inclusive of any interference by defendant with plaintiff's reasonable economic expectancy that he could contract independently with Byars as to price. The allegations concerning plaintiff's forced sale to Byars do not enlarge the scope of the alleged interference but relate only to the damage plaintiff claims he suffered and to the claimed interference with the Rosenow and Woodward agreements. We therefore express no opinion on the subject of the alleged interference of defendant with plaintiff's business relations with Byars.

The judgment of the trial court is affirmed.