Argued and submitted December 5, 1990, the decision of the Court of Appeals and
the judgment of the circuit court reversed and case remanded to the circuit court for
further proceedings July 25, 1991

# UNITED STATES NATIONAL BANK
# OF OREGON,
*Petitioner on Review,*

*v.*

## Neal J. BOGE,
*Respondent on Review,*

### Martin BOGE,
*Defendant,*

*v.*

## J. M. CROWLEY,
*Third-Party Defendant.*

(CC 86-2083; CA A50913; SC S37348)

814 P2d 1082

Gregory A. Chaimov, of Miller, Nash, Wiener, Hager & Carlsen, Portland, argued the cause for petitioner on review. With him on the petition was James N. Westwood, Portland.

Clayton C. Patrick, Salem, argued the cause for respondent on review. With him on the response to the petition was William D. Brandt, Salem.

John A. Bryan and James L. Murch, of Sherman, Bryan, Sherman & Murch, Salem, filed a brief on behalf of *amici*

*curiae* Oregon Bankers Association and American Bankers Association.

Phil Goldsmith, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

GRABER, J.

**GRABER, J.**

This civil case involves a dispute between a bank and its borrower. We decide three questions: (1) Does the duty of good faith imposed by Article 9 of the Uniform Commercial Code (UCC), ORS chapter 79, displace the common law duty of good faith? (2) What is the standard of good faith that Article 9 of the UCC requires? (3) Was there sufficient evidence to support the verdict of the jury, which found a breach of the duty of good faith? We hold: (1) The duty of good faith imposed by Article 9 of the UCC displaces the common law duty of good faith. (2) With an exception not applicable in this case, Article 9 of the UCC requires only honesty in fact in the conduct or transaction concerned; that standard does not encompass commercial reasonableness or the broader concept of good faith under the common law. (3) There was sufficient evidence to support the jury's verdict on the claim of breach of the duty of good faith on one of the two theories presented, although the trial court's erroneous instruction on good faith requires a reversal and remand.

United States National Bank of Oregon (Bank) loaned money to Neal Boge. Bank brought this action to recover on promissory notes executed by Boge. He counterclaimed, asserting, among other things, that Bank had breached its duty to act in good faith. The jury awarded damages to Bank on its claim and greater damages to Boge on his counterclaim. The trial court entered judgment for Boge for the difference between the two amounts and for attorney fees.

Bank appealed to the Court of Appeals. Bank argued that the common law duty of good faith, which was the theory on which the trial court had instructed the jury, does not apply to transactions governed by Oregon's version of Article 9 of the UCC. Bank also argued that the trial court should have directed a verdict in its favor. The Court of Appeals disagreed with both points and affirmed the judgment. *U.S. National Bank v. Boge*, 102 Or App 262, 794 P2d 801 (1990).

ORS 71.1030, which is a provision of the UCC, provides:

"Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity,

including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

The Court of Appeals reasoned that ORS 71.1030 permits the application of the common law duty of good faith, because that "doctrine supplements, but is not inconsistent with the statutory standard" of good faith found in the UCC. 102 Or App at 270. The Court of Appeals also concluded that the evidence was sufficient to support the verdict in Boge's favor. 102 Or App at 267-68.

Bank petitioned for review, and we allowed the petition. We reverse the decision of the Court of Appeals and remand the case to the circuit court.

We view the evidence in the light most favorable to Boge with respect to the counterclaim, because he prevailed before the jury. *Maine Bonding v. Centennial Ins. Co.*, 298 Or 514, 523, 693 P2d 1296 (1985). Boge is a dairy farmer in Tillamook County. On May 4, 1984, Bank loaned him money to buy cows from the Rileys, who also are dairy farmers. Boge granted Bank a security interest in the cows. The parties, and we, agree that the transaction between them (a "security agreement for farm loan") was a secured one that is governed by Article 9 of the UCC, ORS chapter 79.[1]

Boge failed to pay his loan when it became due. On May 12, 1986, S.E. Springer, the manager of Bank's Tillamook branch, sent Boge a 10-day demand letter. That letter included the current payoff figure for Boge's loan and a daily interest figure. When Boge did not make full payment within the 10 days, the Tillamook branch sent his loan file to the Portland branch's "Special Assets Group," which handles foreclosures.

On May 29, 1986, the Rileys tentatively agreed to buy back the cows and then resell them to Boge. The Rileys intended by that means to refinance Boge's purchase and allow him to pay his indebtedness to Bank. Boge had the right

---

[1] ORS chapter 79 applies to any transaction "intended to create a security interest" in personal property. ORS 79.1020(1)(a). The parties' agreement provides that Boge "grants * * * a security interest" in his cows to Bank.

under ORS 79.5060 to "redeem the collateral by tendering fulfillment of all obligations secured by" it. Before the Rileys would refinance the cows, however, they wanted to be assured that they could obtain clear title. Boge and the Rileys went to Springer's office. Boge asked for the payoff figure on his loan and for his loan documents. Springer responded that the file was in Portland and that he could not furnish the information immediately.

In the next day or two, Bank demanded that Boge surrender the cows by June 5, 1986. On June 4, Bank's lawyer sent copies of the loan information to Boge's lawyer. Boge surrendered the cows on June 5. On June 6, the Tillamook branch sent Boge an additional set of his loan documents. The Rileys did not buy back Boge's cows, and Boge did not redeem them from Bank. Bank sold the cows at an auction in Portland on June 16.[2]

At trial, Boge contended that Bank had acted in bad faith when it refused to provide him with his loan information on May 29, 1986, and instead proceeded swiftly to foreclose. Boge produced evidence that his loan information was readily available to Springer by computer on May 29. Boge also produced evidence that Springer was hostile to him and wanted to foreclose on his loan. Boge asserted that Bank's actions caused his refinancing agreement with the Rileys to fail, which, in turn, caused him to lose his dairy business.

Bank moved for a directed verdict on Boge's claim for breach of the duty of good faith, arguing that there was no evidence to support a verdict for Boge. The trial court denied the motion. Bank renewed its theory in a motion for judgment notwithstanding the verdict. The trial court also denied that motion.

Having denied Bank's motion for a directed verdict, the trial court gave this instruction on good faith:

---

[2] The jury found that Bank did not sell the cows in a commercially reasonable manner. Accordingly, although the jury's verdict was for Bank on the notes, the jury subtracted the shortage that it found in the sales price from the amount that Bank was otherwise entitled to receive. On review, Bank does not dispute the finding of commercial unreasonableness. Neither does Boge challenge the jury's verdict for Bank on the notes.

"Now, the Defendant Neal Boge has alleged that U.S. Bank breached the implied covenant of good faith on or about May 30th, 1986, the day on which Mr. Boge requested to see his loan documents. Mr. Boge has alleged that the bank officers did not act in good faith on that day and that the bank's lack of good faith prevented Mr. Boge from obtaining financing to pay off his debt to the bank. If Defendant Neal Boge proves that the officers of U.S. Bank did not act in good faith toward him on the day that he requested to see his loan documents, then before Mr. Boge can recover any damages, he must prove that the bank's alleged bad faith was the cause for his failure to fully pay off his debt to the bank and to retain or gain possession of the cows. Even if the bank officers acted in bad faith, Mr. Boge is entitled to damages on his claim only if he proves that he would have paid the full amount of the debt by June 16th, 1986, the date of the sale of the cows.

"Now I further instruct you that there is an obligation of good faith in the performance and enforcement of every contract. The purpose of the good faith doctrine is to prohibit improper behavior in the performance and enforcement of contracts. The phrase "good faith" is used in a variety of contexts and its meaning varies somewhat with the context. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. *Subterfuges and evasions violate the obligation of good faith and performance even though the actor believes his conduct to be justified, but the obligation goes further.* Bad faith may be overt or may consist of inaction and *fair dealing may require more than honesty.* When one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that the discretion will be exercised for particular purposes. If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith." (Emphasis added.)

The trial court derived that instruction from Restatement (Second) of Contracts § 205 comment d (1979), which this court cited with approval in *Best v. U.S. National Bank,* 303 Or 557, 563, 739 P2d 554 (1987).

Bank excepted on the grounds that the UCC provides the exclusive standard of good faith for this transaction and that the instruction went beyond the UCC standard. Bank

also requested an instruction, which the trial court rejected, that good faith means honesty in fact.

■　We first consider whether the UCC's provisions concerning good faith in a secured transaction displace the common law's implied duty of good faith, which is reflected in the trial court's instruction. ORS 71.2030 provides: "Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance or enforcement." ORS 71.2010 provides in part:

"Subject to additional definitions contained in other sections of the Uniform Commercial Code which are applicable to a specific series of sections, and unless the context otherwise requires * * *:

"* * * * *

"(19)　'Good faith' means honesty in fact in the conduct or transaction concerned."

ORS 79.1050(4) makes that definition of good faith applicable to ORS chapter 79, which governs secured transactions such as this one.

■　The parties agree that Bank was required to perform and enforce the contract, to perform its statutory duties, and to enforce its statutory rights, with the good faith specified by ORS 71.2010(19). What they disagree about is whether that is the *exclusive* standard for Bank's conduct. The common law duty of good faith requires that parties act in an objectively reasonable manner in the performance and enforcement of their contracts. *See Best v. U.S. National Bank, supra,* 303 Or at 561-66 (discussing cases and Restatement).[3]

As noted above, ORS 71.1030 provides that, "[u]nless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity * * * shall supplement its provisions." Bank argues that the particular provisions of the UCC concerning good faith in a secured

---

[3] Some commentators and cases from other states refer to the Restatement and common law standards as "objective." *See, e.g., Garrett v. Bankwest, Inc.,* 459 NW2d 833, 845 (SD 1990); Patterson, *Wittgenstein and the Code: A Theory of Good Faith Performance and Enforcement Under Article Nine,* 137 U Pa L Rev 335, 384 (1988). *See also Kabil Developments Corp. v. Mignot,* 279 Or 151, 155-57, 566 P2d 505 (1977) ("objective" theory of contracts operates in Oregon). In contrast, this court has labeled the UCC standard "subjective." *Community Bank v. Ell,* 278 Or 417, 428, 564 P2d 684 (1977).

transaction displace the implied common law duty of good faith; Boge argues that the common law duty supplements the UCC duty. The question is one of statutory construction. The legislature was free to displace the common law duty of good faith. Our task is to determine whether it did.[4]

Boge argues that this court already answered the question in his favor in *Best v. U.S. National Bank, supra.* The issue in *Best* was whether the trial court had erred in granting summary judgment for the bank on the plaintiffs' claims that the bank had breached its obligation to set checking account customers' nonsufficient fund (NSF) fees in good faith, that the NSF fees were unconscionably high, and that the NSF fees were an unlawful penalty for breach of contract. 303 Or at 559. This court did not cite the UCC anywhere in its opinion. With respect to the duty of good faith, this court wrote:

> "Nothing in the depositors' account agreement with the Bank expressly limited the Bank's authority to set NSF fees. This court has long stated, however, that there is an obligation of good faith in the performance and enforcement of every contract. *See, e.g., Comini v. Union Oil Co.,* 277 Or 753, 756, 562 P2d 175 (1977); *Perkins v. Standard Oil Co.,* 235 Or 7, 16, 383 P2d 107 (1963); *see also* Restatement (Second) of Contracts § 205 (1979). This obligation limited the Bank's apparently unlimited authority to set NSF fees, and the depositors can recover for the breach of this obligation just as they could for the breach of any other contractual obligation." 303 Or at 561.

In deciding whether there was a genuine issue of material fact concerning the bank's good faith in setting NSF fees, this court then cited and discussed common law sources. 303 Or at 562-64.

In *Best v. U.S. National Bank, supra,* whether the UCC duty of good faith displaced the common law duty of good faith in contracts governed by the UCC was not at issue.

---

[4] The Court of Appeals examined the intent of the drafters of Restatement (Second) of Contracts § 205 (1979), as to whether the Restatement would apply to UCC transactions. *U.S. National Bank v. Boge,* 102 Or App 262, 269-70, 794 P2d 801 (1990). That focus is off the mark; the issue is the intent of the drafters of ORS chapter 79.

Even though the UCC governs *some* aspects of the relationship between a bank and its depositors, *see* ORS chapter 74 (bank deposits and collections), *Best* was not a UCC case. Nothing in ORS chapter 74 addresses the limitations on a bank's discretion to set NSF fees. Consequently, this court was not called on to decide what the UCC's duty of good faith means or how it relates to the common law duty of good faith in situations to which the UCC applies. Although the statement in *Best* that "there is an obligation of good faith in the performance and enforcement of every contract," 303 Or at 561, is correct, the nature of that obligation might not be the same in situations governed by the UCC as in those governed by the common law.

The UCC does not state expressly whether, in secured transactions, ORS 71.2010(19) (which is incorporated in Article 9 by ORS 79.1050(4)) displaces the common law's implied duty of good faith. Neither does any legislative history bear directly on the point. There are, however, four indicators of the legislature's intent to displace the common law: the terms, structure, purposes, and history of the pertinent provisions of the UCC.

First, the terms of the pertinent statutes suggest an intent to displace the common law duty of good faith. The common law implies a duty of good faith by which to measure the parties' performance and enforcement of contract terms. ORS 71.2010(19) describes the obligation of good faith by which to measure the parties' performance or enforcement of contract terms. The subject matter is thus identical with respect to the performance or enforcement of contract terms — the standard of good faith. On that subject, the statutory definition is complete on its face.

Of course, the common law did not address the standard by which to measure parties' performance or enforcement of *statutory* duties or rights under the UCC. ORS 71.2030, however, treats contracts and statutes as being parallel: "*Every contract or duty* within the Uniform Commercial Code *imposes an obligation of good faith* in its performance or enforcement." (Emphasis added.) Accordingly, ORS 71.2030 suggests that the statutory definition of good faith is meant to be both uniform and complete. Identity of

subject and completeness of expression do not foreclose supplementation, but they do suggest that the legislature has spoken fully on the topic. *See Seattle-First Nat'l Bk. v. Ore. Pac. Ind.*, 262 Or 578, 580-81, 500 P2d 1033 (1972) (purpose of Article 9 of UCC to regulate completely certain types of conduct "would be blunted if the rules created by some precode decisions and not expressly provided for in the statutory scheme were nevertheless grafted onto the Code by implication"); *Evans Products v. Jorgensen*, 245 Or 362, 372, 421 P2d 978 (1966) (prior cases concerning priority between secured party with "floating lien" and supplier of raw materials to debtor no longer apply; "[t]he purpose and effectiveness of the UCC would be substantially impaired if interests created in compliance with [Article 9] UCC procedures could be defeated by application of the equitable doctrine of unjust enrichment").

Boge argues that the terms of the UCC — specifically, ORS 71.1030 — contemplate that the common law duty of good faith would continue to apply to secured transactions. He seeks to distinguish *Seattle-First Nat'l Bk. v. Ore. Pac. Ind., supra,* and *Evans Products v. Jorgensen, supra,* on the ground that they involved "very specific provisions of the common law * * * [and] equally specific UCC provisions to the contrary." The test of ORS 71.1030, however, is not the narrowness or detail of the rule of law at issue. Rather, the test is whether the principles of law and equity have been "displaced by the particular provisions of the Uniform Commercial Code" that are under consideration. ORS 71.1030. We agree with the commentator who wrote: "Perhaps the best and most 'simplistic' way to look at ORS 71.1030 is to apply it to fill in the gaps but not to replace the existing structure set forth in other specific [Uniform Commercial] Code sections that have problem-solving effects." 1 H. Bailey, Oregon Uniform Commercial Code 13, § 1.6 (2d ed 1990). To borrow Bailey's phrasing, ORS 71.2010(19) has a "problem-solving effect[]," and ORS 71.2010(19) leaves no logical gap in the UCC, which would need to be filled by some other source of law. *See also* Hillman, *Construction of the Uniform Commercial Code: UCC Section 1-103 and "Code" Methodology,* 18 BC Indus & Com L Rev 655, 691-92 (1977) (role of UCC § 1-103 is to fill gaps).

Second, the structure of the UCC suggests that the statutory definition is meant to displace the common law definition. Different sections of the UCC contain different definitions of good faith. For example, ORS 72.1030(1)(b) provides that, in a transaction involving the sale of goods (Article 2), " '[g]ood faith' in the case of a merchant means honesty in fact *and* the observance of reasonable commercial standards of fair dealing in the trade." (Emphasis added.) Similarly, ORS 73.4190, ORS 75.1090(1), ORS 77.4040, ORS 78.3180, and ORS 79.3180 expressly require the observance of reasonable commercial standards in addition to honesty in fact.[5] In contrast, ORS 79.1050(4) applies the UCC's general definitions, including the definition of good faith that appears in ORS 71.2010(19), to secured transactions. ORS chapter 79 contains an expanded definition of good faith in only one subsection, ORS 79.3180(2), which does not apply to this case.

Those differences in statutory wording demonstrate a conscious legislative choice to select a particular definition of good faith — and no other — in each Article or section of the UCC. *See Oregon Business Planning Council v. LCDC,* 291 Or 741, 749, 626 P2d 350 (1981) (where legislature includes express provision in one statute, but omits such provision in another statute, it may be inferred that the omission was deliberate). When the legislature meant to have a transaction governed by a standard of good faith in addition to honesty in fact, it said so. It did not say so for this kind of transaction. The use of a higher standard in only one section of Article 9, ORS 79.3180(2), but not in the remainder of Article 9, shows a conscious legislative choice specifically within Article 9.

Third, displacement of the common law duty of good faith serves the purposes of the statute. The legislature has specified the underlying purposes and policies of the Uniform Commercial Code. ORS 71.1020 provides in part:

"(1) The Uniform Commercial Code shall be liberally construed and applied to promote its underlying purposes and policies.

"(2) Underlying purposes and policies of the Uniform Commercial Code are:

---

[5] Appendix A contains the text of the cited statutes.

"(a) To simplify, clarify and modernize the law governing commercial transactions;

"* * * * *

"(c) To make uniform the law among the various jurisdictions."

Those purposes are served if the statutory duty of good faith displaces the common law duty.

The statutory definition standing alone is simpler and clearer than it would be if it were supplemented by the common law. Our interpretation has the potential to promote certainty in the conduct of commercial transactions.

In addition, exclusivity of the statutory duty of good faith would promote uniformity and certainty in the law. All states that enact the UCC definition of good faith have the same statutory standard, while they may have divergent, or no, common law standards concerning the good faith performance and enforcement of contracts.

Unfortunately, few courts have addressed whether the UCC displaces the common law duty of good faith. Three cases have considered similar questions, with varying results. In *U.S. v. H & S Realty Co.*, 837 F2d 1 (1st Cir 1987), the First Circuit examined whether the Maine UCC's definition of good faith as "honesty in fact" incorporated the broader meaning of good faith set forth in Restatement (Second) of Contracts § 205. The court applied the "honesty in fact" standard, but it provided no helpful analysis and did not answer conclusively the question that we address in the present case. In *Watseka First Nat. Bank v. RODA*, 552 NE2d 775 (Ill 1990), the Illinois Supreme Court discussed the effect of UCC § 1-103 on the Illinois UCC's "honesty in fact" definition of good faith, in the context of an insecurity clause under UCC § 1-208.[6] That court concluded, without explanation, that the UCC's test for good faith is generally subjective,

---

[6] UCC § 1-208, which in Illinois is codified at Ill Rev Stat 1987, ch 26, § 1-208, provides:

"A term providing that one party or his successor in interest may accelerate. payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he *in good faith* believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised." (Emphasis added.)

In Oregon, that section is codified as ORS 79.2080.

but that UCC §§ 1-103 and 1-203 operate as a "moderating influence" to require a "certain amount of objectivity in ascertaining" whether one acted in good faith. *Id.* at 778. The California Court of Appeals, without analysis, allowed a plaintiff to allege that a bank failed to act in good faith under both the UCC's honesty in fact standard and under the broader common law duty of good faith. *E.F. Hutton & Co. v. City National Bank,* 196 Cal Rptr 614, 620, 37 UCC Rep Serv (Callaghan) 834 (Cal Ct App 1983). Some commentators agree with the California approach. *See, e.g.,* Farnsworth, *Good Faith Performance and Commercial Reasonableness Under the Uniform Commercial Code,* 30 U Chi L Rev 666 (1963); Patterson, *Wittgenstein and the Code: A Theory of Good Faith Performance and Enforcement Under Article Nine,* 137 U Pa L Rev 335 (1988); Summers, *General Equitable Principles Under Section 1-103 of the Uniform Commercial Code,* 72 NW L Rev 906 (1978).

There are a number of cases, however, that have considered an analogous problem: whether to apply only the "honesty in fact" standard of Article 9 of the UCC to a secured transaction that involves a merchant. Most courts have refused to import the "objective" good faith standard from Article 2 into Article 9 transactions. *Wainwright Bank v. Railroadmens Federal Sav.,* 806 F2d 146, 150 n 4 (7th Cir 1986); *Frank Davis Buick v. First Alabama Bank,* 423 S2d 855, 858 (Ala Civ App 1982); *Sherrock v. Commercial Credit Corporation,* 290 A2d 648, 650-51 (Del Super 1972); *Massey-Ferguson, Inc. v. Helland,* 434 NE2d 295, 297 (Ill App 1982); *Rigby Corp. v. Boatmen's Bank and Trust Co.,* 713 SW2d 517, 527 (Mo App 1986). The Delaware court wrote that " 'honesty in fact' means what it says, and there is no room for judicial interpretation." *Sherrock v. Commercial Credit Corporation, supra,* 290 A2d at 650-51. By analogy, there is no room to import an "objective" good faith standard from the common law into Article 9 transactions.

Although the decisions to date have not achieved uniformity, few jurisdictions have faced squarely the question that we consider here. The most closely related cases contain little or no useful reasoning. We believe that our interpretation has the potential to promote uniformity, because of the lack of contrary precedent and because of the

relative uniformity of the analogous cases concerning merchants who enter into secured transactions.

Fourth, the history of the UCC supports exclusivity of the statutory duty. UCC § 1-201 contains the definition of good faith. The 1950 draft of the UCC did not contain a separate standard of good faith for merchants. Subsequent drafts provided that "good faith includes the observance by a person of the reasonable commercial standards of any business or trade in which he is engaged." On the recommendation of the American Bar Association's Section on Corporation, Banking, and Business Law, however, the drafters revised the general definition to require only honesty in fact. Bracher, *The Legislative History of the Uniform Commercial Code,* 58 Colum L Rev 798, 812 (1958).[7] Higher standards of good faith were incorporated into some specific Articles of the UCC. Official Comment 19 to UCC § 1-102 provides in part: " 'Good faith,' whenever it is used in the Code, means at least what is here stated. In certain articles, *by specific provision,* additional requirements are made applicable." (Emphasis added.) In other words, honesty in fact was to be the standard unless the Article in question expressly required more.

The Oregon legislature adopted UCC § 1-102(19) as ORS 71.2010(19). Or Laws 1961, ch 726, § 71.2010(19). Although the Official Comments lack the force of law, they are instructive, because the legislature took note of them at the time of adoption, because they are consistent with the structure of the UCC, which we have discussed above, and because the purpose of the Official Comments is to promote uniform construction of the UCC. In *Security Bank v. Chiapuzio,* 304 Or 438, 445 n 6, 747 P2d 335 (1987), this court explained:

"The Uniform Commercial Code was adopted in Oregon with little debate or discussion of the legislative intent. It is possible, however, to discern the basic intent of the legislature in adopting the UCC. The UCC was proposed for Oregon so that Oregon could obtain the same advantages that other states had gained from the adoption of a uniform and comprehensive set of commercial statutes. Malcolm, *The Uniform Commercial Code,* 39 Or L Rev 318 (1960). In adopting

---

[7] Appendix B contains an excerpt from the ABA Committee's report.

the UCC, the legislature took note of the official comments provided by the National Conference of Commissioners on Uniform State Laws. Legislative Council Committee, Oregon's Uniform Commercial Code (1962). While usually referred to as comments, these are actually statements of the purpose of each section. It was the intention of the drafters that these comments be used to determine the purposes of the UCC and accordingly they are labeled as statements of purpose. McDonnell, *Purposive Interpretation of the Uniform Commercial Code: Some Implications for Jurisprudence,* 126 U Pa L Rev 795, 800 (1978).

"The legislative intent behind the UCC can therefore be derived from the language of the statute itself and the language of the comments. In addition, the legislative intent to make the UCC a uniform code makes relevant the decisions of other courts that have examined these questions and the discussions of the questions by scholars in the field, especially those scholars who participated in drafting the UCC."

*See also Szabo v. Vinton Motors, Inc.,* 630 F2d 1, 4 (1st Cir 1980) (purpose of Official Comments is to promote uniform construction of UCC).

We conclude that the statutory duty of good faith found in ORS 71.2010(19) and made applicable to secured transactions by ORS 79.1050(4) displaces the common law duty of good faith, in transactions to which ORS chapter 79 applies.[8] The next question is what the statutory standard means.

■ Boge argues that the trial court's instruction, which stated that "fair dealing may require more than honesty," is consistent with the UCC, as well as with the common law. This court stated in *Community Bank v. Ell,* 278 Or 417, 428, 564 P2d 685 (1977), however, that:

"the appropriate standard [under the UCC] is a subjective one, looking to the intent or state of mind of the party concerned. The question is generally one for the jury unless only one inference from the evidence is possible. Although mere negligence or failure to make the inquiries which a reasonably prudent person would make does not of itself

---

[8] As noted above, ORS 79.3180(2) is an exception within Article 9, in that it requires both good faith and commercial reasonableness for transactions to which it applies. ORS 79.3180(2) does not apply in this case.

amount to bad faith, if a party fails to make an inquiry for the purpose of remaining ignorant of facts which he believes or fears would disclose a defect in the transaction, he may be found to have acted in bad faith."

As one commentator has phrased it:

"[The UCC's definition of good faith] sets forth a 'subjective' standard. In other words, good faith does not require the absence of negligence or the following of the standards of the 'reasonable and prudent' person. All that is necessary is 'a pure heart and empty head.' " 1 H. Bailey, *supra,* § 1.12 at 22.

Cases from other jurisdictions also apply a subjective standard of good faith to Article 9 transactions. *Wainwright Bank v. Railroadmens Federal Sav., supra; Martin Marietta Corp. v. N.J. Nat. Bank,* 612 F2d 745 (3d Cir 1979); *Frank Davis Buick v. First Alabama Bank, supra; Sherrock v. Commercial Credit Corporation, supra; Massey-Ferguson, Inc. v. Helland, supra; Rigby Corp. v. Boatmen's Bank and Trust Co., supra.*

In contrast, the common law standard of good faith is an "objective" one that considers the reasonable expectations of the parties. It may, as the trial court instructed, "require more than honesty." *See Best v. U.S. National Bank, supra,* 303 Or at 562-65 (doctrine protects reasonable expectations of the parties to a contract); *Comini v. Union Oil Co.,* 277 Or 753, 756, 562 P2d 175 (1977) (defendant could not arbitrarily refuse to approve a sale where no legitimate business interests of consequence to it would be served); *Perkins v. Standard Oil Co.,* 235 Or 7, 15-17, 383 P2d 107 (1963) (parties to a contract ordinarily contemplate that discretion in performance will be exercised for particular purposes); Restatement (Second) of Contracts comments a and d § 205 ("good faith" requirement excludes a variety of types of conduct that violate community standards of decency, fairness, or reasonableness; actor may violate the obligation of good faith even though he or she believes conduct to be justified).

We conclude that, except as to transactions governed by ORS 79.3180(2), the UCC requires only "subjective" good faith — that is, "honesty in fact in the conduct or transaction concerned" — in transactions governed by ORS chapter 79. ORS 71.2010(19); ORS 79.1050(4). In the present case, the UCC does not require "fair dealing" or "more than honesty,"

as the trial court instructed. The instruction defining good faith was erroneous.

■  The next question to be answered is whether the erroneous instruction caused prejudice. If not, the error does not require reversal. *Waterway Terminals v. P.S. Lord,* 256 Or 361, 370, 474 P2d 309 (1970). *See also Honeywell v. Sterling Furniture Co.,* 310 Or 206, 211-12, 797 P2d 1019 (1990) (principle applied to instruction that correctly described law but distracted jury from appropriate analysis of issue before it). Here, the trial court erroneously told the jury that, even if Bank acted honestly, more was required. There was evidence from which a jury could have found that Bank acted honestly in fact, as well as opposing evidence. The jury may have found that Bank acted honestly but that Boge should prevail nonetheless. The standard for Bank's conduct was the central issue to be decided. The error was prejudicial.

Ordinarily, after deciding that an erroneous instruction was prejudicial, we would reverse and remand for a new trial. In this case, Bank argues that it is entitled to a reversal without being subjected to a new trial, because there was no evidence from which a jury could have found in Boge's favor on his claim for breach of the duty of good faith. Boge presented evidence that Bank's employee harbored subjective ill will toward him. Boge also presented evidence of damages from his failure to redeem the cows. Bank argues that that evidence was insufficient to support the verdict, because Boge was using the duty of good faith improperly to add a substantive term to the parties' bargain and because he failed to prove causation.

In addition to proving ill will and damages, Boge also must have proved that his damages were caused by Bank's act[9] outside the expressly permissible means of enforcement found in the contract or in the pertinent statutes, or by its other exercise of discretion in a manner not reasonably contemplated by the parties (in the case of the contract) or the legislature (in the case of the UCC). *See Utility Equipment v. Morbark Industries,* 308 Or 209, 219, 779 P2d 139 (1989) (In

---

[9] The trial court properly instructed the jury that Boge was required to prove that Bank's breach of the duty of good faith "was the cause for his failure to fully pay off his debt to the bank and to retain or gain possession of the cows."

a commercial transaction involving the scope of a warranty, "the requirement for Morbark's written approval prior to submission of a claim indicates that the decision as to whether costs are 'excessive,' whether a manufacturing defect is 'major,' and whether reimbursement will be full or partial falls within Morbark's discretion, subject, perhaps, only to Morbark's obligation to act in good faith. *See* ORS 71.2030."); *Best v. U.S. National Bank of Oregon, supra,* 303 Or at 561-66 (obligation of good faith attached to bank's discretion under account agreement to set NSF fees; "[w]hen one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that that discretion will be exercised for particular purposes"); *Comini v. Union Oil Co., supra,* 277 Or at 756-57 (obligation of good faith attached to defendant's discretionary right to disapprove of plaintiff's transfer of the distributorship); *Perkins v. Standard Oil Co., supra,* 235 Or at 13-17 (the "covenant of good faith and fair dealing" was applied to interpret an ambiguous, incomplete term of the contract); Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith,* 94 Harv L Rev 369, 367 (1980) (bad faith performance of a contract is "an exercise of discretion in performance to recapture opportunities foregone at formation").

■　　The obligation of good faith does not vary the substantive terms of the bargain or of the statute, nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract or statute. As this court noted in the common law context:

> "The law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates 'the reasonable contractual expectations of the parties.' *Best v. U.S. National Bank, supra,* 303 Or at 563 * * *.

> "The foundation of the at-will employment agreement is the express or implied understanding that either party may terminate the contract for any reason, even for a bad cause. A duty of good faith and fair dealing is appropriate in matters pertaining to ongoing performance of at-will employment agreements. *It is not appropriate to imply the duty if it is inconsistent with a provision of the contract." Sheets v.*

> *Knight,* 308 Or 220, 233, 779 P2d 1000 (1989) (emphasis added; some citations omitted).

*See also Garrett v. Bankwest, Inc.,* 459 NW2d 833 (SC 1990) (bank breached no duty in refusing to loan borrower additional money to pay off debt to another lender, who was foreclosing); *Federal Deposit Ins. Corp. v. Coleman,* 795 SW2d 706 (Tex 1990) (bank breached no duty by failing to foreclose promptly); *Bank of Hartland v. Arndt,* 385 NW2d 219, 233 (Wis 1986) (UCC imposed no duty on bank to file a continuation statement; therefore, debtor's claim failed to establish statutorily required conduct to which a good faith obligation attached).

■ In arguing that the evidence was sufficient to create a jury issue as to good faith, Boge relies on two things. First, he points to evidence that Bank decided to foreclose promptly after his default and demanded that he surrender the collateral when Bank knew that he still hoped to redeem. Bank acted within its express rights under the contract and the UCC. For that reason, Bank's motive is irrelevant. "The obligation to act in good faith does not bar a party from enforcing whatever legal rights he possesses." 1 R. Anderson, *Uniform Commercial Code* § 1-203:11 at 381 (3d ed 1981). *See also Bliss v. Southern Pacific Co.,* 212 Or 634, 646, 321 P2d 324 (1958) (in common law context, if an enforceable contract expressly creates rights or privileges, motive for exercising them is immaterial). Boge cannot recover on his theory that Bank breached the duty of good faith by enforcing its legal rights.

■ In addition, Boge points to evidence that Bank rudely refused to give him payoff information on May 29, in order to prevent him from paying off the notes. Boge testified that Bank prevented him from redeeming his cows by failing on May 29 to provide him with the loan payoff amount and loan documents, which he needed to consummate his sale to the Rileys. As noted above, Boge had the right to recover his cows by paying his full debt to Bank before Bank sold the cows. ORS 79.5060. After reviewing the record, we conclude that there was sufficient evidence of causation to create an issue of fact for the jury on Boge's second theory. Because there was evidence to support the jury's verdict on one of Boge's two theories, we reverse and remand. *See Whinston v. Kaiser*

*Foundation Hospital,* 309 Or 350, 356-61, 788 P2d 428 (1990) (remand for new trial was required where some allegations of negligence were supported by evidence but others were not, and court could not determine basis of jury's verdict).[10]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

---

[10] We do not decide the remaining issues that the petition for review raises, because they might or might not arise on remand.

## APPENDIX A

ORS 73.4190(3) provides:

"Subject to the provisions of the Uniform Commercial Code concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith *and in accordance with the reasonable commercial standards applicable to the business of such representative* dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in the hands of the representative." (Emphasis added.)

ORS 75.1090(1) provides in part:

"An issuer's obligation to its customer includes good faith *and observance of any general banking usage * * *."* (Emphasis added.)

ORS 77.4040 provides in part:

"A bailee who in good faith *including observance of reasonable commercial standards* has received goods and delivered or otherwise disposed of them according to the terms of the document of title or pursuant to ORS 771.1010 to 77.6040 is not liable therefor." (Emphasis added.)

ORS 78.3180 provides:

"An agent or bailee who in good faith *(including observance of reasonable commercial standards if the agent or bailee is in the business of buying, selling or otherwise dealing with securities)* has received certificated securities and sold, pledged or delivered them or has sold or caused the transfer or pledge of uncertificated securities over which the agent or bailee had control according to the instructions of the agent's or bailee's principal, is not liable for conversion or for participation in breach of fiduciary duty although the principal had no right so to deal with the securities." (Emphasis added.)

ORS 79.3180(2) provides in part:

"So far as the right to payment or a part thereof under an assigned contract has not been fully earned by performance, and notwithstanding notification of the assignment, any modification of or substitution for the contract made in good

faith *and in accordance with reasonable commercial standards* is effective against an assignee * * *." (Emphasis added.)

## APPENDIX B

The reason that the committee gave for recommending the deletion was as follows:

"[W]e submit that as presently defined 'good faith' involves not one or two concepts but at least four graduated but quite different concepts. They are:

"(1)  Honesty in fact.

"(2)  Commercial decency.

"(3)  Observance of reasonable commercial standards.

"(4)  Observance of presently existing and established trade practices.

"This committee believes it is a serious mistake to include or to run the risk of including all of the concepts in the one term 'good faith.' Although we recognize that there are some court decisions that have added to 'honesty in fact' in the meaning of 'good faith' the requirement to observe some commercial standards of conduct, nevertheless we believe that to the average person and the average lawyer, 'good faith' signifies primarily 'honesty.' Assuming, however, that within the term there should be added to 'honesty' some meaning of 'commercial decency' the phrase 'observance of reasonable commercial standards' carries with it the implication of usages, customs, or practices. If this is true there immediately arises the very difficult problem of *what* usages, customs and practices are those intended to be included in the standard. Any lawyer who has ever attempted to prove what a usage or custom is will immediately recognize how litigious such a standard could grow to be. More serious still is the possibility that 'reasonable commercial standards' could mean usage, customs or practices existing at any particular time. This could have the very bad effect of freezing customs and practices into particular molds and thereby destroy the flexibility absolutely essential to the gradual evolution of commercial practices, — a result which the Code draftsmen certainly would never desire."

Committee on the Proposed Commercial Code, Section on Corporation, Banking, and Business Law of the American Bar Association, *Report: Developments Since the September 1949 Report,* 6 Bus Law 119, 127-28 (1951) (emphasis in *original*).