**William A. NEILSON, Plaintiff,**

v.

**Mary Elaine BECK, Defendant.**

**Civ. No. 94–520–FR.**

United States District Court,
D. Oregon.

April 12, 1995.

Robert E. Maloney, Jr., Kathryn P. Salyer, Lane Powell Spears Lubersky, Portland, OR, for plaintiff.

Paul J. Rask, Portland, OR, for defendant.

## OPINION

FRYE, District Judge.

The matter before the court is the motion of the plaintiff, William A. Neilson, for summary judgment (# 38) and the cross-motion of the defendant, Mary Elaine Beck, for summary judgment (# 45).

## UNDISPUTED FACTS

In 1987, William A. Neilson and Mary Elaine Beck were co-petitioners in an action to dissolve their marriage. Pursuant to the decree of dissolution, Neilson agreed to hold Beck harmless from certain joint marital obligations, including tax liabilities that might be assessed for the years 1980 and 1981 due to a controversy with the Internal Revenue Service (IRS) and the Oregon Department of Revenue (ODR) involving investments made by Neilson as tax shelters. Neilson also agreed to pay a second mortgage in the amount of $23,000. In October of 1988, the

IRS assessed joint tax liabilities against Neilson and Beck in the amount of $63,917.09, plus penalties and interest. Shortly thereafter, the ODR assessed joint tax liabilities against Neilson and Beck in the amount of $5,991.00, plus penalties and interest.

Despite his agreement to hold Beck harmless for the tax liabilities, Neilson did not pay the taxes. Neilson and Beck attempted to negotiate a compromise regarding their tax liabilities.[1] However, they were unable to reach an agreement, and in July of 1991, Beck paid the IRS $71,897.91 and the ODR $15,493.82.

Beck filed a complaint against Neilson in the Circuit Court of the State of Oregon for the County of Washington for fraud and breach of contract. She sought damages in excess of $500,000, including the amount she had paid in taxes, the amount of the second mortgage, her attorney fees, and $250,000 in punitive damages.

On November 27, 1991, Neilson filed a Chapter 7 petition in bankruptcy seeking to discharge his obligations to Beck. Neilson did not list the tax obligations for 1980 and 1981 in the Chapter 7 petition that he filed in bankruptcy.

On or about February 19, 1992, Beck applied for relief from the IRS and the ODR under regulations allowing for a refund of taxes paid by an "innocent spouse." Internal Revenue Code § 6013(a)(3). Beck did not advise Neilson that she had applied for tax refunds. However, as early as June of 1991, Beck's tax attorney, Russell Sandor, had discussed with Neilson's attorney, Carmen SantaMaria, the possibility/probability that Beck would file for refunds under the innocent spouse provision of the IRS code. SantaMaria told Sandor that it was unlikely that Beck would receive refunds. Deposition of Carmen SantaMaria, p. 25 (attached as Exhibit 11 to Defendant's Motion for Cross–Summary Judgment).

---

1. In June of 1991, Neilson told Beck that he would pay $30,000 to the IRS in partial satisfaction of their joint tax obligations in exchange for Beck's promise to satisfy the balance of the joint tax obligation and to release Neilson from any further obligation to Beck. Beck did not sign the proposed agreement. On July 10, 1991, Neilson paid the IRS $30,000 for individual tax liabilities for the years 1988 and 1989. Exhibit 4 to Defendant's Motion for Cross–Summary Judgment, p. 4.

On February 27, 1992, Beck filed as an adversary in Neilson's Chapter 7 proceeding in the bankruptcy court, objecting to the discharge of Neilson's obligations under their property settlement agreement incorporated in their decree of dissolution. On or about April 28, 1992, Beck filed a complaint in the Circuit Court of the State of Oregon for the County of Multnomah against William A. Neilson & Associates, Inc., seeking to set aside an alleged fraudulent conveyance from Neilson to William A. Neilson & Associates, Inc. On May 14, 1992, Neilson filed an adversary proceeding in the bankruptcy court seeking to enjoin the litigation filed by Beck in the Multnomah County Circuit Court. On July 21, 1992, Neilson converted his Chapter 7 bankruptcy proceeding to a Chapter 13 bankruptcy proceeding. Complaint, ¶¶ 10–13.

In September of 1992, the parties entered into a Settlement Agreement and Release of Claims (the "Settlement Agreement") and a Pledge Agreement. In the Settlement Agreement, the parties agreed that the facts recited in the Settlement Agreement were true, accurate and complete, and that each recited fact was to be contractually binding upon the parties. Exhibit 9 to Defendant's Motion for Cross–Summary Judgment, p. 1. In the Settlement Agreement, the parties agreed that Neilson did not possess funds or other assets sufficient in an amount to enable him to fully satisfy his obligations under the parties' decree of dissolution of their marriage, and that the obligations were paid by Beck prior to July 19, 1991 when she satisfied the balance due on the second mortgage, approximately $23,000, and also paid taxes, penalties and interest totalling $87,391.73. *Id.* at 2. In the Settlement Agreement, the parties also agreed that "in consideration of the foregoing recitals and mutual promises contained in this Agreement it is mutually agreed upon by the parties hereto as follows ... Neilson agrees to pay Beck $32,400 payable at the rate of $900 per month." *Id.* at 3. "In consideration of the payments provided for above, Beck agrees to dismiss *with prejudice and without costs*, the Litigation referred to in paragraphs C, E & F above. Neilson agrees to dismiss his Bankruptcy Proceeding and the Adversary Proceeding

referred to in Paragraph G." *Id.* at 5 (emphasis in original). As additional consideration, the parties exchanged mutual releases.

On or about October 25, 1993, the IRS refunded approximately $70,000 to Beck. Shortly thereafter, the ODR refunded approximately $10,000 to Beck. On or about January 17, 1994, the IRS notified Neilson that he had tax liabilities for the years 1980 and 1981 in the approximate sum of $71,000. On or about May 19, 1994, the ODR notified Neilson that he had a tax liability in the approximate sum of $16,500. Amended Complaint, ¶¶ 18–21. On or about October 25, 1993, Beck had received approximately $12,000 from Neilson pursuant to their Settlement Agreement.

## APPLICABLE STANDARD

██ "The interpretation of a contract is a mixed question of law and fact." *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir.1985). When the court's ruling rests on either an analysis of the language of the contract or an application of the principles of contract interpretation, the decision is one of law, and is therefore appropriate for summary judgment. *See id.*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## CONTENTIONS OF THE PARTIES

Neilson contends that summary judgment in his favor is appropriate because the only reasonable construction of the Settlement Agreement is that Neilson agreed to pay Beck the sum of $32,400 because Beck had satisfied the tax obligations which Neilson had agreed to pay in the parties' decree of dissolution. Neilson contends that Beck

breached the express terms of their contract by obtaining a refund of the federal and state taxes that she had paid because of the parties' 1980–1981 joint tax liabilities. According to Neilson, the parties intended the recitals in their Settlement Agreement to be contractually binding, including the recital that Beck had paid the 1980–1981 tax liabilities. Neilson contends that, because Beck received a refund of the 1980–1981 taxes, the IRS and the ODR reinstated his tax liabilities, thereby depriving him of the benefit of his bargain when he signed the Settlement Agreement. In the alternative, Neilson argues that Beck breached the implied covenant of good faith and fair dealing in the Settlement Agreement by obtaining the tax refunds because her conduct in doing so divested him of the benefit of his bargain when the Settlement Agreement was signed.

Beck contends that she performed all of her obligations under the Settlement Agreement. Beck agrees with Neilson that the language of the Settlement Agreement is unambiguous. However, Beck contends that the language of the Settlement Agreement cannot be reasonably construed to prohibit her from exercising her right to a tax refund under the innocent spouse provision of the IRS code because the Settlement Agreement is silent with regard to that issue. Beck argues that she did not relinquish her right to obtain a tax refund from the IRS and the ODR in consideration for Neilson's payment of $32,400; rather, she agreed to dismiss her pending lawsuits with prejudice and without costs to Neilson and agreed to release Neilson from all further obligations under their decree of dissolution regarding the taxes and the second mortgage. Additionally, Beck contends that she did not act in bad faith in the performance of any part of her obligations under the Settlement Agreement, and that Neilson received the benefit of his bargain when she dismissed with prejudice and without costs to Neilson her lawsuits against him and agreed not to enforce her right under the decree of dissolution to indemnification from Neilson for payment of the tax liabilities for the years 1980 and 1981.

Both parties also move this court for an award of attorney fees and costs under the provision of the Settlement Agreement which provides for attorney fees and costs to be awarded to the prevailing party in a suit under the Settlement Agreement.

## ANALYSIS AND RULING

■ Unambiguous terms of a settlement agreement will be enforced. Whether the terms of a contract, such as a settlement agreement, are ambiguous is a question of law. *Pacific First Bank v. New Morgan Park Corp.*, 319 Or. 342, 876 P.2d 761 (1994). "Words or terms of a contract are ambiguous when they reasonably can, in context, be given more than one meaning." 319 Or. at 348, 876 P.2d 761.

■ Recital B of the Settlement Agreement states that prior to July 19, 1991, Beck "satisfied the balance due on the second mortgage and also paid taxes, penalties and interest totalling $87,391.73." Exhibit 9 to Defendant's Cross–Motion for Summary Judgment, p. 2. The Settlement Agreement also provides: "THE TRUTH, ACCURACY, AND COMPLETENESS OF EACH RECITED FACT IS EXPRESSLY ACKNOWLEDGED BY THE PARTIES AND THIS ACKNOWLEDGEMENT IS INTENDED TO BE CONTRACTUALLY BINDING UPON THE PARTIES." *Id.* at 1.

Neilson argues that Beck was prohibited from obtaining refunds from the IRS and the ODR because Beck was contractually bound by her representation in the Settlement Agreement that she had paid the taxes. Neilson argues that the common and ordinary meaning of the word "paid" means that Beck had discharged Neilson's tax obligations for 1980 and 1981.

No language in the Settlement Agreement addresses the "innocent spouse" provision of the IRS code. No language in the Settlement Agreement prohibits Beck from obtaining a refund of the taxes she paid. No language in the Settlement Agreement obligates Beck to pay Neilson's tax obligations for the years 1980 and 1981. The tax obligations of Beck and Neilson for the years 1980 and 1981 were joint and several obligations, meaning that both Neilson and Beck

were responsible to the IRS and the ODR for the full amount of the tax liabilities of each of them. In the Settlement Agreement, Beck agreed to dismiss the lawsuits she had filed against Neilson and agreed to release Neilson and his corporation from all obligations except for those arising under the Settlement Agreement, including her right under their decree of dissolution of marriage for indemnification from Neilson for the taxes she had paid for the years 1980 and 1981. However, she did not release any right of recovery she may have had against a third party, such as the IRS. That being so, the court concludes that Beck did not breach the express terms of the Settlement Agreement.

■ Neilson argues, in the alternative, that Beck breached the covenant of good faith and fair dealing implied in the Settlement Agreement by obtaining refunds from the IRS and the ODR because such conduct was contrary to the justified expectations of both of them and deprived Neilson of the benefit of his bargain.

■ Every contract contains an implied duty of good faith and fair dealing. *Comini v. Union Oil Co.*, 277 Or. 753, 756, 562 P.2d 175 (1977). Neither party may engage in any act that will destroy or injure the right of the other to receive the benefits of the bargain or that may undermine the justified expectations of the parties. *Best v. United States Nat'l Bank*, 303 Or. 557, 562–63, 739 P.2d 554 (1987). "The law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates 'the reasonable contractual expectations of the parties.'" *Sheets v. Knight*, 308 Or. 220, 233, 779 P.2d 1000 (1989) (quoting *Best v. United States Nat'l Bank*, 303 Or. at 563, 739 P.2d 554). However, "it is only the objectively reasonable expectations of the parties that will be examined in determining whether the obligation of good faith has been met." *Pacific First Bank v. New Morgan Park Corp.*, 319 Or. at 352, 876 P.2d 761 (quoting *Tolbert v. First Nat'l Bank*, 312 Or. 485, 494, 823 P.2d 965 (1991)).

Neilson argues that "Beck cannot seriously maintain that where she received monetary and other valuable consideration for having paid taxes owed by Neilson she has a right to obtain a refund of those taxes especially where, as here, the foreseeable consequence of the refund was a reinstatement of the taxes against Neilson." Plaintiff's Motion For Summary Judgment, p. 12. This argument is unpersuasive because Beck never paid Neilson's tax obligations. She paid her own tax obligations and then promptly instituted legal action against Neilson in order to enforce the terms of their property settlement agreement, incorporated in their decree of dissolution, in which Neilson promised to hold Beck harmless for any tax liabilities for the years 1980–1981 incurred as a result of tax shelter investments.

Under the express terms of the Settlement Agreement, the consideration for Neilson's payment of $32,400 and the dismissal of his bankruptcy petition was Beck's promise to dismiss her pending lawsuits against Neilson, with prejudice and without costs to Neilson, and to release Neilson from all further liability under the parties' decree of dissolution regarding the second mortgage and the tax liabilities for the years 1980 and 1981. Under the unambiguous terms of the Settlement Agreement, Beck did not give up her right to pursue recovery of the amount she had paid to the IRS and the ODR under the innocent spouse provision of the IRS code. The court concludes that Neilson's expectation that Beck would not seek a refund from the IRS and the ODR was not reasonable in view of the unambiguous terms of the Settlement Agreement. Even though Beck failed to disclose her applications for refunds from the IRS and the ODR at the time that the parties executed their Settlement Agreement, Neilson's attorney, Carmen SantaMaria, knew as early as July of 1991 that Beck was considering applying for a refund. Although it may have been reasonable for Neilson to have expected that the IRS would not give Beck a refund under the innocent spouse provision, it was not reasonable for Neilson to have expected that Beck would not pursue refunds of the taxes she had paid. The court concludes that Beck did not breach the covenant of good faith and fair dealing in the

Settlement Agreement. Neilson received the benefit of his bargain when Beck dismissed her lawsuits against him and his corporation and released her claims against Neilson under the decree of dissolution.

Under the terms of the Settlement Agreement, as a prevailing party, Beck is entitled to an award of attorney fees and costs incurred in this action.

## CONCLUSION

The court concludes that there are no genuine issues of material fact and that Beck is entitled to judgment as a matter of law. Accordingly, the motion of Neilson for summary judgment (# 38) is denied, and the cross-motion of Beck for summary judgment (# 45) is granted. Beck shall receive her costs and attorney fees incurred in this action.