Argued and submitted on March 14, affirmed October 19, 2005

Robert B. EWALT,
*Appellant,*

*v.*

COOS-CURRY ELECTRIC COOPERATIVE, INC.,
an electric cooperative; and James K. Arntz,
*Respondents.*

03CV0260; A124096

120 P3d 1288

David S. Tilton argued the cause and filed the brief for appellant.

Francis T. Barnwell argued the cause for respondents. With him on the brief was Bullard Smith Jernstedt Wilson.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.*

LANDAU, P. J.

* Armstrong, J., *vice* Richardson, S. J.

**LANDAU, P. J.**

Plaintiff worked as chief accountant for Coos-Curry Electric Cooperative, Inc. When the cooperative terminated his employment, he initiated this action against his employer and his supervisor (collectively, defendants) for breach of contract, wrongful discharge, and intentional interference with economic relations. The trial court entered summary judgment in favor of defendants dismissing all claims. Plaintiff appeals, arguing that there is at least a genuine issue of material fact as to each of his claims. We affirm, writing only to discuss the dismissal of the breach of contract claim.

On review of a summary judgment, we examine the record in the light most favorable to the nonmoving party to determine whether there are genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. ORCP 47 C; *Clark v. DSU Peterbilt and GMC, Inc.*, 193 Or App 17, 19, 87 P3d 1159, *rev den*, 337 Or 282 (2004).

In April 1999, plaintiff applied for a position as chief accountant at the cooperative. The application included, among other things, an at-will employment provision:

"3. I understand and agree that if I am offered and accept a position, I may resign or be terminated, with or without cause or notice, at any time;

"4. I agree to conform to all existing and future Coos-Curry Electric Cooperative policies and rules, and I understand that such policies and rules may be changed, interpreted, withdrawn or added to as the company deems appropriate."

Plaintiff completed the application, acknowledged that he had read the foregoing, and signed it.

In May 1999, the cooperative hired plaintiff for the position. The cooperative's general manager and plaintiff's supervisor, Arntz, gave plaintiff a copy of the cooperative's policies, as promulgated by its board of directors. Among the policies was Policy Bulletin No. 41, which described certain work rules to be enforced by supervisors. The bulletin began with a general statement of policy:

"These work rules are to be enforced fairly and uniformly, and not in an arbitrary manner by supervisors. Employees are entitled to adequate notice and warning of the consequences of their behavior and a fair and objective investigation of the facts must be made before discipline is administered. Where immediate action is required, an employee may be suspended, pending an investigation. Discipline short of discharge shall be used whenever possible for violation of these rules."

There followed a statement that "violation of any of these rules will constitute just cause for disciplinary action up to and including discharge." The bulletin then listed 22 different violations, any one of which constituted "just cause for disciplinary action up to and including discharge." The bulletin closed with a chart captioned "GUIDELINES FOR DISCIPLINARY ACTION BY SUPERVISORS FOR VIOLATIONS OF WORK RULES." Those guidelines suggested various disciplinary actions for first, second, or third violations of each of the 22 work rules.

Plaintiff's work entailed maintenance of the cooperative's general ledger, and overseeing its accounting, billing, and payroll functions. He also, at least nominally, supervised five employees.

During 2002, Arntz participated in preparing the cooperative's financial statements and reports. Among other things, he separated out from the statements certain financial data relating to a subsidiary of the cooperative. Plaintiff did not object to that action.

On August 26, 2002, Arntz terminated plaintiff from his position based on "deficient job performance." At the time, plaintiff believed that defendants had terminated him because he knew that they had taken improper actions concerning the preparation of the cooperative's financial statements. Up to that point, he had never discussed that concern with Arntz because he felt "intimidated."

Plaintiff initiated this action asserting, among other things, a claim for breach of contract. In that claim, he alleged that he and the cooperative had entered into an employment contract under which he could be terminated only for just cause.

Defendants moved for summary judgment on the ground that plaintiff was an at-will employee. According to defendants, plaintiff signed an employment application that expressly provided that he could "resign or be terminated, with or without cause or notice, at any time." Plaintiff responded that the employment application had, in effect, been superseded by Policy Bulletin No. 41, which he characterized as creating an employment contract that guaranteed that he could be terminated only for just cause. Defendants rejoined that Policy Bulletin No. 41 was, by its terms, a set of "guidelines" to be used by supervisors such as plaintiff in managing employees. It did not, defendants argued, even apply to the supervisors themselves, such as plaintiff.

The trial court granted defendants' motion. In its letter opinion, the court explained that the application unambiguously stated that plaintiff could resign or be terminated at any time with or without cause or notice. The court rejected plaintiff's contention that the at-will employment agreement had been superseded by Policy Bulletin No. 41. The court explained that the bulletin contained "guidelines and not absolute rules," which, plaintiff had agreed, defendants had the discretion to interpret and apply as they saw fit in the absence of bad faith. Noting that plaintiff had not alleged or demonstrated bad faith, the court ordered that the breach of contract claim be dismissed.

■     On appeal, plaintiff essentially renews the arguments that he unsuccessfully advanced to the trial court. He argues that Policy Bulletin No. 41 created an employment contract under which his employment was governed by a just cause provision. Defendants, too, essentially renew their arguments. They contend that the application plainly states that plaintiff was an at-will employee and that nothing in Policy Bulletin No. 41 states the contrary. Defendants argue that the bulletin instead sets out nonenforceable "guidelines" that, in any event, expressly are to be applied by supervisors to employees. Plaintiff replies that, although the bulletin may not apply to "supervisors," in fact, he was not a "supervisor," as that term is defined in state and federal wage and hour laws. Defendants respond that whether plaintiff was a "supervisor" within the meaning of state or federal wage and hour laws is irrelevant, because they regarded him as a

supervisor for the purposes of the bulletin's applicability and, as plaintiff agreed, they had discretion to interpret the bulletin in that fashion.

■ As a general rule, an employment contract creates an at-will arrangement that may be terminated by either the employee or the employer at any time, for any reason or for no reason. *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 620, 733 P2d 430 (1987). Employers, however, are free to alter the usual at-will condition of employment by an agreement to the contrary. *Id.*

In this case, the employment application unambiguously states that plaintiff was hired with the understanding that he "may resign or be terminated, with or without cause or notice, at any time." Plaintiff acknowledged that he had read that statement in the application and signed the application that contained it. The employment application also stated that plaintiff agreed that defendants had the authority to adopt policies and rules and that such policies and rules "may be changed, interpreted, withdrawn or added to as the company deems appropriate."

This case therefore turns on whether Policy Bulletin No. 41, as defendants interpreted it, amounted to an agreement to alter the at-will relationship that plaintiff's employment application described. Of course, defendants' interpretation of the policy is subject to the conditions that it be reasonable and undertaken in good faith. *See generally Best v. U.S. National Bank of Oregon*, 303 Or 557, 561-66, 739 P2d 554 (1987) (discussing principle; "When one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that that discretion will be exercised for particular purposes[.]"); *Comini v. Union Oil Co.*, 277 Or 753, 756-57, 562 P2d 175 (1977) (obligation of good faith attached to the defendant's discretionary right not to consent to the plaintiff's transfer of the distributorship).

We turn to the terms of Policy Bulletin No. 41. Nothing in the bulletin purports to alter any existing at-will employment relations. By its terms, it states "work rules" for supervisors to use in managing employees, including "guidelines" for supervisors to use in determining what discipline

may be appropriate "up to and including discharge." Such "guidelines" do not constitute separately enforceable contractual terms of employment. *See, e.g., Mobley v. Manheim Services Corp.*, 133 Or App 89, 93, 889 P2d 1342, *rev den,* 321 Or 47 (1995) (progressive discipline policy that is described as a "general guide" did not abrogate at-will employment).

Moreover, as defendants correctly note, the bulletin does not apply to "supervisors." Plaintiff acknowledges that much, but argues that, Policy Bulletin No. 41 applied to him because he was not a "supervisor" under state and federal wage and hour tests. *See generally* 29 CFR § 541.100; OAR 839-020-0005.

Plaintiff, however, misses the point. Whether or not he would qualify as a "supervisor" under state or federal wage and hour tests, the fact remains that he agreed that defendants retained the authority to interpret the term as it is used in Policy Bulletin No. 41 differently. Nothing in plaintiff's arguments or in the record suggests that, in interpreting the term "supervisor" to apply to persons such as plaintiff who had management authority over others, but without hiring or firing authority, defendants acted unreasonably or in bad faith.

Aside from that, the regulations on which plaintiff relies do not even define the term "supervisor." They define who are "administrative," "executive," and "professional" employees for the specific purpose of determining whether employees are exempt from particular requirements of state and federal wage and hour requirements. It simply does not follow that, because an employee is not an "executive" within the meaning of state and federal wage and hour laws, the same employee cannot be regarded as a "supervisor" for other purposes.

We conclude that, as a matter of law, Policy Bulletin No. 41, as interpreted by defendants, did not abrogate the at-will condition of employment to which plaintiff expressly agreed in his employment application. The trial court therefore did not err in entering summary judgment in favor of defendants on plaintiff's breach of contract claim. ·

Affirmed.