Argued and submitted October 14, affirmed December 21, 1994

Kay LUND,
*Appellant,*

*v.*

ARBONNE INTERNATIONAL, INC.,
a Utah corporation;
B. J. Vollstedt, individually
and as an agent for
Arbonne International, Inc.;
and Joyce Raker, individually
and as an agent for
Arbonne International, Inc.,
*Respondents.*

(91-3659-L-1; CA A82007)

887 P2d 817

Robert E. Bluth argued the cause for appellant. With him on the briefs was Frohnmayer, Deatherage, Pratt, Jamieson, Turner & Clarke, P.C.

Peter R. Chamberlain argued the cause for respondent Arbonne International, Inc. With him on the brief was Bodyfelt Mount Stroup & Chamberlain.

Cynthia A. Wiens argued the cause for respondents B. J. Vollstedt and Joyce Raker. With her on the brief was Cowling & Heysell.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

**De MUNIZ, J.**

Plaintiff brought this action against defendant Arbonne International, Inc. (Arbonne), for, *inter alia,* breach of contract, violation of the Unlawful Trade Practices Act (UTPA), ORS 646.605 *et seq,* interference with business relations and defamation. Plaintiff alleged claims against defendants Raker and Vollstedt for defamation and intentional interference with contractual relations. The trial court granted defendants' motions for summary judgment. We affirm.

Arbonne is a company that develops and produces beauty and skin care products that are marketed through "consultants." To become a consultant with Arbonne, the individual fills out an application in which the individual acknowledges that he or she will work as an "independent contractor." When the application is filled out and a fee paid, the individual is considered "registered" with the company. In January, 1987, plaintiff filled out an application and became a registered consultant.

Raker and Vollstedt were already Arbonne consultants. Raker had "sponsored" Vollstedt, and Vollstedt sponsored plaintiff. The significance of sponsoring a person as a consultant is that the sponsor receives commissions on all of the sponsored consultant's sales, and on the sales of all people whom that consultant, in turn, sponsors into the sales network. This sponsorship network is referred to as the consultant's "down line." Thus, plaintiff was in Vollstedt's "down line" and both Vollstedt and plaintiff were in Raker's "down line."

In 1990, plaintiff also became a consultant for a different company. Shortly thereafter, Arbonne instituted a policy that an Arbonne consultant could not directly or indirectly sponsor any Arbonne consultant to sell products or services for any other company, a practice known as "cross-sponsoring." In August, 1991, Vollstedt wrote a letter to Kochen, the corporate executive officer for Arbonne, requesting that plaintiff be "deregistered." On September 19, 1991, Kochen wrote to plaintiff, alleging that she had violated the policies relating to cross-sponsoring, and gave her ten days in which to send a "satisfactory written response" that she had

not violated Arbonne's policies. Plaintiff responded but, on October 19, Arbonne deregistered plaintiff.

Plaintiff first assigns error to the summary judgment for Arbonne on her breach of contract claim. She argues that the trial court erred in concluding that the parties had an "at will" relationship that either party could terminate and that there was no duty of good faith and fair dealing in the contract. Plaintiff alleged that she "was not an employee, agent or legal representative of Arbonne International," but was an "independent contractor" who "operat[ed] under an implied contract." She alleged that her deregistration, which was "without just cause or justification," was a breach of the implied contract and the duty of good faith and fair dealing between the parties.

On appeal, plaintiff appears to have abandoned her position that Arbonne breached an implied contract. Rather, the gist of her argument is that Arbonne's right to deregister her was limited, because her application did not reserve a right for Arbonne to terminate the agreement at will and because Arbonne's policy manual states that a consultant may be deregistered for violating policies. She argues that there are questions of fact as to whether the agreement was an "at will" agreement, whether plaintiff violated any policy and whether Arbonne acted in good faith.

We conclude that, even under the position plaintiff now takes, the trial court did not err in granting summary judgment on the claim. Plaintiff acknowledges that, generally, the rule in Oregon is that a contract for an indefinite period may be terminated at will when reasonable notice is given.[1] *Anderson v. Waco Scaffold & Equip.*, 259 Or 100, 485 P2d 1091 (1971); *Fleming v. Kids and Kin Headstart*, 71 Or App 718, 722 n 1, 693 P2d 1363 (1985). Here, the only agreement between plaintiff and Arbonne was the 1987 application for registration. It does not set out a definite period for

---

[1] Plaintiff seeks to avoid application of that rule by arguing that the rule requires reasonable notice, which is intended to allow a party to a contract the opportunity to recoup its investment. *See Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F2d 167 (8th Cir 1987). Plaintiff did not plead or argue that Arbonne's notice was unreasonable until her reply brief. We do not address it. *Ailes v. Portland Meadows*, 312 Or 376, 823 P2d 956 (1991).

the relationship. We conclude that the agreement established an "at will" relationship.

■■ We also reject plaintiff's argument that Arbonne's policy statement changed the "at will" relationship. Personnel policy statements may create contractual obligations between an employee and an employer. *Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 576 P2d 356 (1978). However, even assuming that the same obligations may be created in an independent contractor relationship, the policy manual here does not limit Arbonne's right to terminate the relationship at will. Instead, it reinforces that right by specifically reserving for Arbonne the unilateral power to make a final decision to terminate the relationship.[2]

Plaintiff argues that, even if the agreement was one at will, Arbonne's right to terminate it was limited by the obligation of good faith and fair dealing. Plaintiff's position is that the doctrine of good faith has been developed to effectuate the reasonable contractual expectations of the parties, *Best v. U. S. National Bank*, 303 Or 557, 563, 739 P2d 554 (1987), and that allowing Arbonne to terminate the agreement here deprived her of all the benefits of her hard work and investment. Arbonne responds that, while the law imposes a duty of good faith in the performance of contracts, that duty does not reach the right to terminate an at-will contract, even for a bad cause. *Sheets v. Knight*, 308 Or 220, 233, 779 P2d 1000 (1989).

In *U.S. National Bank v. Boge*, 311 Or 550, 814 P2d 1082 (1991), the defendant counterclaimed for breach of the bank's duty to act in good faith after the bank moved to foreclose on loans it had made to the defendant. The Supreme Court summarized its previous holdings on good faith:

> "The obligation of good faith does not vary the substantive terms of the bargain or of the statute, nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract or statute. As this court noted in the common law context:

---

[2] As pertinent, the manual provides:

"Arbonne reserves the right to deregister any Consultant or Manager for any violation of any of its policies, effective as of the date of the violation. * * *

"* * * Any disciplinary decision by the Home Office will be final."

" 'The law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates "the reasonable contractual expectations of the parties." *Best v. U.S. National Bank, supra,* 303 Or at 563 * * *.

" 'The foundation of the at-will employment agreement is the express or implied understanding that either party may terminate the contract for any reason, even for a bad cause. A duty of good faith and fair dealing is appropriate in matters pertaining to ongoing performance of at-will employment agreements. It is not appropriate to imply the duty if it is inconsistent with a provision of the contract.' *Sheets v. Knight,* [*supra,* 308 Or at 233]." 311 Or at 567. (Emphasis deleted.)[3]

■■ We have held that the agreement here was an at-will relationship that either party could terminate on reasonable notice. The motives of the party terminating that relationship are irrelevant to a claim for breach of contract. *See Bliss v. Southern Pacific Co. et al,* 212 Or 634, 321 P2d 324 (1958). Arbonne did not violate any duty of good faith or fair dealing in regard to plaintiff's deregistration.

Plaintiff next assigns error to the trial court's grant of summary judgment on her claim against Arbonne for violation of the UTPA. The trial court concluded that the Act does not apply to this agreement. Plaintiff asserts that her allegations were that Arbonne violated ORS 646.608(1)(e)[4]

---

[3] *See also Estey & Associates, Inc. v. McCulloch Corp.,* 663 F Supp 167 (D Or 1986), in which a distributor sued a manufacturer alleging, *inter alia,* a claim for bad faith termination of an at-will contract. Applying Oregon law, the court concluded:

"The claim for bad faith termination fails. Plaintiff cannot point to an Oregon case in which a bad faith termination of an at will contract supports liability. Indeed, to allow such a claim would emasculate the termination at will doctrine, and must be rejected." 663 F Supp at 171.

[4] ORS 646.608(1) provides, in part:

"A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following:

"* * * * *

"(e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have."

and ORS 646.607(1).[5] Under both of those provisions, a person engages in an unlawful practice if the prohibited acts are done in connection with "real estate, goods or services." Under ORS 646.605(7), "real estate, goods or services" means

> "those which are or may be obtained primarily for personal, family or household purposes, or which are or may be obtained for any purposes as a result of a telephone solicitation, and includes franchises, distributorships and other similar business opportunities * * *."

Arbonne argues that the UTPA is intended to regulate consumer transactions, not business or commercial transactions, *Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or 85, 90 n 4, 566 P2d 1177 (1977); *Investigators, Inc. v. Harvey*, 53 Or App 586, 590, 633 P2d 6 (1981), and that the 1973 amendment to ORS 646.605[6] to include franchises and distributorships did not broaden the scope of the legislation to apply generally to non-consumer transactions. Plaintiff argues that there is an issue of fact as to whether the UTPA applies, because the marketing scheme of Arbonne is "precisely the type of franchise, distributorship, or similar business opportunity referred to in the statute."

■ ■ Even assuming that plaintiff is correct that the statute is broad enough to reach the distributorship[7] here,

---

[5] ORS 646.607 provides, in part:

"A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person:

"(1) Employs any unconscionable tactic in connection with sale, rental or other disposition of real estate, goods or services, or collection or enforcement of an obligation[.]"

[6] Oregon Laws 1973, chapter 235, section 1.

[7] The legislative history shows that the intent of the amendment was to protect the unwary consumer. Michael Gillette, then chief counsel of the Consumer Protection Division of the Attorney General's office, explained the need for the amending phrase "and includes franchises, distributorships and other similar business opportunities" in testimony before the House Committee of State and Federal Affairs:

"With respect to franchises and distributorships, our experience with the fairly well-known program known as Dare to Be Great brought to our attention an unexpected flaw in the present Unlawful Trade Practices Act. That flaw exists where there are fraudulent solicitations of unwary and inexperienced citizens to become distributors and where the goods received [to be distributed were] purchased from their vendor, are not to be used, as the language of the statute now is, for personal, family or household purposes but rather are to be held by them for resale. If they're to be held by them for resale [then] the fraudulent

the record on summary judgment does not show that there are material issues of fact as to whether Arbonne violated the UTPA under plaintiff's allegations. Plaintiff alleged that Arbonne used unconscionable tactics in "deregistering" her; that is not an allegation of an unlawful "unconscionable tactic in connection with sale, rental or other disposition of real estate, goods or service" under ORS 646.407(1).

■ Plaintiff also alleged that Arbonne represented that the business opportunity contained characteristics that it did not have, in violation of ORS 646.408(1)(e). Plaintiff alleged that Arbonne represented that there were no restrictions on the location of plaintiff's territory and that the only limitation on achieving financial success was plaintiff's willingness to devote time and effort in developing the organization. At deposition, plaintiff admitted that there were no territorial limits on where she could market Arbonne's products. Although it is undisputed that Arbonne terminated the relationship, that is not the same thing as preventing plaintiff from achieving success while the relationship existed, and there was no evidence that Arbonne did anything to limit plaintiff's achievement. The trial court did not err in granting summary judgment for Arbonne on the UTPA claim.

■ Plaintiff next assigns error to the grant of summary judgment on her claim against Arbonne for interference with business relations. The interest protected by that cause of action is the interest an individual has in the contractual relationships into which he or she has entered. *Wampler v. Palmerton*, 250 Or 65, 73, 439 P2d 601 (1968). The defendant's interference must affect a relationship between the plaintiff and a third party. *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 626, 733 P2d 430 (1987). The elements that a plaintiff must allege to state a claim are that the defendant intentionally interfered with a business relationship, that the interference was improperly motivated or used improper

---

misrepresentations that are used by the parent company are not subject to action by our division.

"Now, again, the victims of these kinds of schemes are exactly the same kind of victim that the Act is concerned about but they're excluded from our protection simply because they were victimized into trying to become merchants rather than victimized into trying to buy something which they were going to use in their own house." House Committee on State and Federal Affairs, March 23, 1973, Tape 13, Side 1 at 166.

means and that, as a result, the plaintiff was damaged beyond the fact of the interference. 302 Or at 621; *Aylett v. Universal Frozen Foods Co.*, 124 Or App 146, 152, 861 P2d 375 (1993).

■ Plaintiff's claim was based on the allegation that Arbonne's decision to end the business relationship constituted an intentional interference between plaintiff and her Arbonne customers. However, the record on summary judgment does not show an issue of fact as to interference by Arbonne with an improper motive or means. There is no evidence that Arbonne interfered directly with plaintiff's relationship with her customers. Arbonne terminated its own relationship with plaintiff. What plaintiff is seeking is damages for the consequences of that termination. Because we have held that the termination was not wrongful, plaintiff has no claim for the collateral consequences of the termination. The trial court did not err in granting Arbonne summary judgment on plaintiff's claim for interference with business relations.

Plaintiff next assigns error to the grant of summary judgment for all the defendants on her claims of defamation, and for Raker and Vollstedt on her claim of intentional interference with business relations. She asks us to consider the claims together. Plaintiff's defamation claim was supported by one statement and two letters: Plaintiff testified that, while attending an Arbonne meeting, Raker had told another consultant that she should stay away from plaintiff, because plaintiff had "cross-sponsored four people and was in a lot of trouble"; Vollstedt wrote a letter to Arbonne's chief executive officer cataloging the reasons why Vollstedt felt that Arbonne should terminate its relationship with plaintiff; and Arbonne's chief executive officer, Kochen, wrote to plaintiff telling her of Arbonne's decision to terminate its relationship with her.

■ ■ We assume for the sake of argument, as do the parties, that the statements were defamatory. Each defendant claimed a qualified privilege. A statement that is otherwise defamatory is privileged if it is uttered under such circumstances that the law grants immunity to the speaker. *Wattenburg v. United Medical Lab.*, 269 Or 377, 379, 525 P2d 113 (1974). A qualified, or conditional, privilege to make a defamatory statement arises when it is made to protect the

interests of the plaintiff's employer or is on a subject of mutual concern to the defendant and those to whom it is made. *Wattenburg v. United Medical Lab., supra; Benassi v. Georgia-Pacific,* 62 Or App 698, 702, 662 P2d 760, *mod* 63 Or App 672, 667 P2d 532, *rev den* 295 Or 730 (1983). The privilege may be lost if the speaker does not believe that the statement is true or lacks reasonable grounds to believe that it is true; if it is published for a purpose other than that for which the particular privilege is given; if the publication is made to some person not reasonably believed to be necessary to accomplish the purpose; or if the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose. *Shafroth v. Baker,* 276 Or 39, 45, 553 P2d 1046 (1976).

 Plaintiff contends that there are issues of fact as to whether the privilege here was lost. As we understand her position, she argues that, because the publications were to persons who were "consultants" but who were not in plaintiff's "up line," the statements were merely "grist for the gossip mill" and were made with the improper motive of profiting by plaintiff's removal. However, the evidence was that the publications were made to and by persons who shared a business interest in Arbonne, either by virtue of a position in the company or as a consultant. The evidence shows that the statements were on a matter of mutual concern that could affect them all—plaintiff's conduct as an Arbonne consultant. There was no evidence from which it could be found that defendants had no reasonable belief in the truth of the statements or that they acted with an improper motive.[8] There was no evidence that defendants abused their

---

[8] To show that defendants lacked a reasonable belief in the truth of their statements, plaintiff had to offer evidence creating a question of fact as to the mental states of defendants at the time they made the statements. *Bickford v. Tektronix, Inc.,* 116 Or App 547, 551, 842 P2d 432 (1992). Motive likewise presents issues of a mental state.

Plaintiff appears to focus on improper motive, claiming that, with plaintiff out of the business, percentage bonuses from down line sales that would have gone to plaintiff would go to Vollstedt. That is a statement about the way Arbonne operates its business. Standing alone, it permits no inference as to intent or motive. *See Bickford v. Tektronix, Inc., supra,* 116 Or App at 551. Furthermore, plaintiff testified at deposition that she did not know what motive Vollstedt or Raker had in making the statements and had no opinion as to their motives. Likewise, Vollstedt's letter, which gave legitimate business reasons to deregister plaintiff, does not provide a basis from which to infer a wrongful motive on Vollstedt's part.

qualified privilege, and the trial court did not err in granting summary judgment on the defamation claims.

 It also did not err in granting summary judgment to Vollstedt and Raker on the claim for intentional interference with business relations. Plaintiff's claim was based on the allegedly defamatory statements. We have held that those statements were privileged and that there was no evidence of improper motive. Thus, plaintiff failed to show the existence of a material issue of fact as to improper motive or means. *See Lewis v. Oregon Beauty Supply Co., supra.*

Affirmed.