Argued and submitted September 13, 1995, affirmed September 18, 1996

# U. S. GENES,
## a California corporation,
### *Respondent,*

*v.*

# Ken VIAL,
### *Appellant.*

## (CV92-341; CA A84998)

923 P2d 1322

Bruce C. Moore argued the cause for appellant. With him on the brief was Moore & Orr, P.C.

Gary A. Rueter argued the cause for respondent. With him on the brief was Haugeberg, Rueter, Stone, Gowell & Fredricks, P.C.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

Warren, P. J., concurring.

## ARMSTRONG, J.

Defendant appeals the grant of a directed verdict for plaintiff on plaintiff's claim for damages and on defendant's counterclaim in an action for breach of a distributorship agreement. We affirm.

■ On appeal from a judgment granting plaintiff a directed verdict, we recite the facts in the light most favorable to defendant. *Comini v. Union Oil Co.*, 277 Or 753, 755, 562 P2d 175 (1977). Plaintiff sells frozen bovine semen to the dairy industry in a number of western states. In March 1989, defendant approached plaintiff's general manager, Lyle Sorum, about becoming a distributor for plaintiff's products, but there were no openings at the time. Plaintiff already had an Oregon distributor, Ray Orisio. Later that year, however, plaintiff made defendant a distributor in an effort to increase the sale of its products in Oregon. Defendant knew that Orisio would continue to sell plaintiff's products in Oregon and would compete directly with him for customers.

On January 9, 1990, the parties signed an agreement, drafted by plaintiff, that appointed defendant as a distributor of plaintiff's products in Oregon, exclusive of Malheur County. At that time, plaintiff sold its products solely through independent distributors. Its distributors were not prohibited from carrying its competitors' products, and both defendant and Orisio did so.

In May 1991, plaintiff terminated its agreement with defendant and drafted a new one entitled "Distributor Agreement," which the parties also signed in May. The new agreement modified the prior agreement in several respects. It eliminated the concept of an assigned territory and stated that the distributorship was "nonexclusive." Paragraph 5 provided that the agreement was terminable on four grounds:

"(a) By mutual written agreement of the parties;

"(b) Automatically upon the death, incapacity, or filing bankruptcy by Distributor;

"(c) Automatically upon the dissolution or filing of bankruptcy by U.S. GENES; or

"(d)   By either party, upon the date stated in a written notice of termination which is mailed to the other party hereto at least thirty (30) days prior to the effective date of such termination."

The new agreement changed the termination notice provision from 60 to 30 days and deleted the distributor's obligation to continue purchasing products from plaintiff up to the effective date of the termination. The new agreement also carried over an express "good faith and fair dealing" provision in paragraph 11:

"Both parties agree, with respect to this agreement, to engage in good faith and in fair dealing with respect to the other at all times during the term of this agreement."

Every six to eight weeks, plaintiff's sales manager, Rex McMahon, reviewed with defendant his sales performance in relation to his sales goals and provided him with a written review. None of defendant's written reviews contained any negative comments. Nevertheless, defendant was not meeting the sales goals set by plaintiff.

On April 1, 1992, plaintiff's corporate board of directors decided to change the way its products were sold in Oregon by terminating the two independent distributors and hiring a company employee to sell its products. Accordingly, plaintiff terminated defendant's and Orisio's agreements pursuant to paragraph 5(d) and hired Keith Rupprecht as its Oregon salesman on April 20, 1992. Rupprecht immediately began selling plaintiff's products in Oregon. Due to a technical defect in the original termination letter sent to defendant, a second notice was sent extending the termination date to June 1, 1992.

On May 29, 1992, two days before the termination date, defendant ordered two pieces of durable storage equipment and semen supplies worth more than $4,000, the cost of which he charged to his account with plaintiff. At termination, the outstanding balance of defendant's account with plaintiff stood at $12,091.69.

Defendant refused to pay the balance due on the account, so plaintiff sued for payment of it, together with interest, costs and attorney fees. In his answer, defendant

admitted that he had purchased the goods but denied owing plaintiff any money. He also counterclaimed for damages for plaintiff's alleged breach of the agreement by failing to act fairly and in good faith.

■      After the parties had rested at trial, plaintiff moved for a directed verdict on its claim for payment of the account balance on the ground that defendant had admitted that he had purchased the goods and had not paid for them. Defendant opposed the motion, arguing that plaintiff was not entitled to prevail because it had materially breached the agreement, thereby entitling defendant to set off his damages against the amount owed to plaintiff. We conclude that the court properly granted the directed verdict on plaintiff's claim. There is no dispute that defendant purchased the products and did not pay for them. Defendant would be entitled to an offset on the claim for any amount recovered on his counterclaim, but that does not prevent entry of a directed verdict for plaintiff on *its* claim. That is because there were no factual issues to decide and plaintiff was entitled to prevail on the claim as a matter of law.

Plaintiff also moved for a directed verdict on defendant's counterclaim, arguing, first, that the distributorship was an "at-will" agreement and, thus, the good faith and fair dealing provision did not apply to its termination and, second, that plaintiff had terminated the agreement for a legitimate business purpose. In response, defendant argued that the good faith provision expressly restricted the parties' right to terminate the agreement and that there were issues of fact about whether plaintiff had acted in good faith in terminating the agreement.

The trial court concluded that the parties' agreement was an at-will agreement, that no restrictive terms applied to limit the right to terminate the agreement on notice, and that the language of the good faith provision added nothing to the duty of good faith that is implied in every contract. Thus, pursuant to *Sheets v. Knight*, 308 Or 220, 779 P2d 1000 (1989), the trial court held that there was no factual issue about whether plaintiff had breached the agreement by terminating it. It therefore granted plaintiff a directed verdict on defendant's counterclaim.

Defendant makes six assignments of error. We write only to address his argument that there was a factual issue about whether plaintiff breached its contractual "good faith and fair dealing" obligation. In his counterclaim, defendant alleged that plaintiff breached its good faith duty as follows:

"A. In terminating the Distributor Agreement with the Defendant solely because the Defendant refused to carry only the Plaintiff's products;

"B. In terminating the Defendant without a statement, warning or critique of the Defendant;

"C. In terminating the Defendant after the Defendant had developed increased market share for the Plaintiff in Oregon;

"D. In placing another replacement Distributor into the Defendant's market for the sole purpose of taking sales from the Defendant before the time for the termination of the Defendant had accrued."

If the duty of good faith applies to the termination of the contract, and if there are facts that would allow a reasonable jury to find that plaintiff acted other than in good faith, the trial court erred in directing a verdict for plaintiff.

■ We conclude that the court erred in holding that the parties' contract was an at-will contract that could be terminated by either party for any reason, including a reason that the law condemns. The source of the court's error was its decision to treat the express good faith provision in the contract as equivalent to the covenant of good faith and fair dealing that is implied in every contract. The implied covenant of good faith does not limit a party's right to terminate an at-will contract, *Sheets*, 308 Or at 233-34, so the court reasoned that the express provision does not either.

■ However, express and implied covenants of good faith cannot be equated. Parties to an at-will contract are understood to be able to terminate their contract for any reason, including a bad-faith reason. *See, e.g., id.* at 233. Consequently, the implied covenant does not limit the right to terminate such a contract because, if it did, the contract would no longer be one that could be terminated for any reason. *See, e.g., id.*

■    But the issue here is whether the parties' contract *is* a contract that can be terminated for any reason, and that is determined by analyzing and giving effect to the terms of the parties' written contract, including the express provision on good faith. The analysis does not *begin* with the proposition that the contract is one that can be terminated for any reason, which is the point at which comparable cases involving the implied covenant of good faith begin.[1]

■    The termination provision at issue states that the contract can be terminated by either party by giving a 30-day termination notice to the other. It states the manner in which the contract can be terminated but says nothing about the reasons for termination.

The good faith provision, in turn, says that

> "[b]oth parties agree, with respect to this agreement, to engage in good faith and in fair dealing with respect to the other *at all times during the term of this agreement*."

(Emphasis supplied.) The decision to exercise the contractual right to terminate the agreement is a decision that necessarily is made "during the term of [the] agreement," so it is a decision that is conditioned by the obligation to act fairly and in good faith. We conclude, therefore, that plaintiff was required to act in good faith when it decided to terminate its agreement with defendant.[2]

Even though the termination provision required the parties to act in good faith, "[i]t may be reasonably assumed that, at the time the parties gave their contractual consent to the termination provision, they contemplated that either party was privileged to invoke the right to cancel in order to

---

[1] In other words, the court's role is to interpret the terms of the contract to determine whether it is terminable for any reason, not to reconcile those terms with the conclusion that it is.

[2] The concurrence concludes otherwise. Its flaw is that it fails to give effect to the requirement in paragraph 11 of the agreement that the parties "engage in good faith and in fair dealing with respect to [each] other * * * during the term of [the] agreement." That express obligation necessarily takes precedence over any implied right to terminate the agreement, and that obligation is appropriately reconciled in our decision with the express right to terminate stated in paragraph 5 of the agreement. The concurrence focuses solely on the manner in which competing *implied* rights and obligations in an agreement are to be reconciled, which does not resolve the issues presented by this case.

protect its own legitimate business interests." *Comini*, 277 Or at 756. We must consider, then, whether defendant introduced evidence that would allow a reasonable jury to find that plaintiff acted in bad faith in terminating the contract.

■ ■ Oregon courts have not attempted to set forth a comprehensive definition of good faith. *See Best v. U.S. National Bank*, 303 Or 557, 563, 739 P2d 554 (1987).

> "The purpose of the good faith doctrine is to prohibit improper behavior in the performance and enforcement of contracts. Because the doctrine must be applied to the entire range of contracts, definitions of good faith tend to be either too abstract or applicable only to specific contexts. For this reason, Professor Summers has argued that good faith should be conceptualized as an 'excluder,' by which he means that good faith should be defined only by identifying various forms of bad faith."

*Id.* at 562. The duty of good faith operates to give effect to the parties' reasonable contractual expectations. It is an objective standard. In general, reasonable expectations include the right of either party to further its own legitimate business interests. *Comini*, 277 Or at 563-64.

■ Sorum, plaintiff's general manager, testified that defendant's sales had not been adequate. He explained that plaintiff's board of directors had met in early April 1992 and had decided to change from using distributors to making direct sales of its products in Oregon. The reason for the change was that plaintiff had increased its sales in Washington by making the same change. He explained that, at times, defendant was selling more of plaintiff's competitors' semen than of plaintiff's. By hiring a direct employee, plaintiff could be sure that the employee would devote his full efforts to selling plaintiff's semen. Sorum also explained that using a direct salesperson cost less than using a distributor.

At trial, defendant made much of the fact that he had not received written criticism about his performance during the term of the contract. He fails to explain, however, why the lack of criticism translates into a bad-faith motive by plaintiff for the termination. Defendant also contends that, because plaintiff's direct salesperson began selling in Oregon after defendant had received notice of termination, but before

the contract had terminated, plaintiff acted in bad faith. Again, defendant fails to explain how this action could be construed to establish bad faith. Plaintiff was acting to promote the sale of its products—a legitimate business goal. Nothing in the record supports defendant's allegation that plaintiff acted solely to deprive defendant of business.

Dissatisfaction with defendant's performance is not a bad-faith reason to terminate the contract. Neither is choosing to restructure the company's sales methods by hiring a direct employee and terminating independent distributors. Defendant failed to put on any evidence that would allow a reasonable jury to conclude that plaintiff failed to act in good faith when it terminated the contract with defendant. Therefore, the trial court did not err in directing a verdict for plaintiff on defendant's counterclaim.

Affirmed.

**WARREN, P. J.,** concurring.

In this case, the majority affirms the trial court's decision but says that the court erred in holding that the contract was one at-will. I concur in the majority's result, but write separately because I conclude the trial court was correct in holding that the express "good faith" provision in the contract did not alter the nature of the employment contract and did not restrict the reasons or the motives for which either party could terminate the contract.

The majority's reasoning merits scrutiny because, in effect, it guts the legal proposition that employment contracts are generally at-will, and thus, terminable for any reason without regard to motive. The flaw in the majority's analysis is that it concludes, without any meaningful reasoning, that the parties' express recitation of "good faith" adds something more to their contractual duties and obligations than what is already imposed under the implied covenant of good faith. *See Wyss v. Inskeep,* 73 Or App 661, 668 n 7, 699 P2d 1161, *rev den* 300 Or 64 (1985). If, as the majority contends, a simple statement of "good faith," without more, will suffice to change the nature of the contract from one terminable at-will to one terminable only for cause, then it escapes

me why, when the same covenant is implied, the same result does not follow.

In *U.S. National Bank v. Boge*, 311 Or 550, 814 P2d 1082 (1991), the Oregon Supreme Court summarized its holdings on good faith:

> "The obligation of good faith does not vary the substantive terms of the bargain * * * nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract or statute. As this court noted in the common law context:

> " 'The law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates "the reasonable contractual expectations of the parties." *Best v. U.S. National Bank,* [303 Or 557, 563, 739 P2d 554 (1987)] * * *.

> " 'The foundation of the at-will employment agreement is the express or implied understanding that either party may terminate the contract for any reason, even for a bad cause. A duty of good faith and fair dealing is appropriate in matters pertaining to ongoing performance of at-will employment agreements. It is not appropriate to imply the duty if it is inconsistent with a provision of the contract.' *Sheets v. Knight,* 308 Or 220, 233, 779 P2d 1000 (1989) * * *." 311 Or at 567. (Emphasis deleted.)

Here, pursuant to paragraph 11, the contract provided:

> "Both parties agree, with respect to this agreement, to engage in good faith and in fair dealing with respect to the other at all times during the term of this agreement."

That is no more than an expression of what the law already implies. The majority fails to explain why this expression, which is unrelated to any specific provision in the contract, changes the contract from one at-will into one that can only be terminated for good cause and why the fact that the parties wrote it down makes the employment contract any different.[1] The majority attempts to explain that it makes a difference because the decision to exercise the contractual right to

---

[1] It does not necessarily follow, as the majority seems to imply, that the express good faith provision *must* act to restrict the parties' ability to terminate the

terminate the agreement is a decision that necessarily is made during the "term" of the agreement. That is true but does not help us resolve the question of whether this is an at-will contract or not. A decision to terminate any employment contract is made during the term of the contract. The majority fails to explain, in any satisfactory way, why this contract is not at-will. An express covenant of good faith that adds nothing to the implied obligation of good faith does not change the contract from one at-will.

Additionally, defendant's argument that plaintiff's unconditional right to terminate the agreement upon notice is restricted by the duty of good faith is inconsistent with an express provision of this contract.[2] A generally stated duty of good faith cannot vary the substantive right of each party to end the contract for any reason, subject only to the giving of notice. 311 Or at 567. As the Supreme Court stated in *Sheets*, "[t]he foundation of the at-will employment agreement is the express or implied understanding that either party may terminate the contract for any reason, even for a bad cause." 308 Or at 233.

As set out above, the duty of good faith operates to effectuate the reasonable expectations of the parties as determined under the terms of their contract; it is an objective standard. In the present case, the reasonable contractual expectations of the parties are shown by the unambiguous terms of paragraph 5(d) of the agreement, in which the parties agreed that either party had the unilateral right to terminate the agreement on the condition that 30 days written

---

agreement, just because we attempt, in construing a contract, to give effect to every word and phrase.

[2] Our understanding that this is so is evident from our reference in *Lund v. Arbonne International, Inc.*, 132 Or App 87, 887 P2d 817 (1994), to *Estey & Associates, Inc. v. McCulloch Corp.*, 663 F Supp 167 (D Or 1986), in which the Oregon Federal District Court, in applying Oregon law in the context of a claim for bad faith termination of an at-will contract, stated:

"The claim for bad faith termination fails. Plaintiff cannot point to an Oregon case in which a bad faith termination of an at will contract supports liability. Indeed, to allow such a claim would emasculate the termination at will doctrine, and must be rejected." 663 F Supp at 171.

*Lund*, 132 Or App at 92 n 3.

notice is given to the other party. There were no other restrictions on the right to terminate for any reason. Because plaintiff properly exercised its right to terminate the at-will agreement, the trial court did not err in granting the directed verdict on defendant's counterclaim. The majority's discussion of whether plaintiff acted in good faith is unnecessary to a proper resolution of this case.

For those reasons, I concur in the majority's result but not its reasoning.