Argued and submitted June 10, 1999, reversed and remanded in part; otherwise
affirmed January 5, 2000

Ruth BENDL,
*Appellant,*

*v.*

Loren PARKS
and Parks Foundation,
*Respondents,*

*and*

CANVASSER SERVICES, LTD.
and Canvasser Services, Inc.,
*Defendants.*

(9610-08223; CA A102499)

994 P2d 802

James H. Gidley argued the cause for appellant. With him on the briefs were Paul Bierly, and Bogle & Gates P. L. L. C.

Janet Schroer argued the cause for respondents. With her on the brief were Marjorie A. Speirs, Paul R. J. Connolly, Connolly & Doyle, LLP, and Hoffman, Hart & Wagner.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

In this case, the jury returned a verdict for plaintiff on her defamation claim for damages. The trial court, however, granted defendant's[1] motion for a judgment notwithstanding the verdict (*jnov*). ORCP 63. Plaintiff appeals. On appeal, a *jnov* must be set aside if there is any evidence in the record to support the jury's verdict. *King v. All Pro Services, Inc.*, 120 Or App 479, 483, 852 P2d 943 (1993); *see also Jacobs v. Tidewater Barge Lines*, 277 Or 809, 811, 562 P2d 545 (1977). We view the evidence in the light most favorable to the plaintiff, draw all reasonable inferences in her favor, and reverse.[2]

According to the evidence, plaintiff and defendant Loren Parks have been active in placing measures on the ballot for Oregon voters. Parks has provided considerable financial support for those efforts, and plaintiff is an accomplished signature gatherer for the petitions that have been filed to place measures on the ballot. In 1993, the two developed a friendship, and they began to work more closely on measures that Parks supported. In 1994, Parks suggested that plaintiff form a company that Parks would finance in order to file initiative measures that Parks supported on the ballot for the November 1996 election. As a result, Canvasser Services, Inc. (Canvasser), was formed as a nonprofit corporation. Canvasser hired individuals to go to places where the public congregated and to solicit signatures for initiative petitions.

While plaintiff managed the day-to-day operations of Canvasser and took responsibility for the work of the signature gatherers, Parks maintained control over Canvasser and plaintiff's work. Canvasser operated out of two offices that shared space with other companies owned by or associated with Parks. In addition, Canvasser received administrative support from the staff of those companies. Plaintiff's regular monthly salary came from Canvasser and the Parks Foundation.

---

[1] Defendants include Loren Parks, the Parks Foundation, Canvasser Services, LTD, and Canvasser Services, Inc. The motion for a judgment notwithstanding the verdict on the defamation claim was granted only to Parks.

[2] The judgment includes an award on plaintiff's wage claim and an award of costs to plaintiff that are not the subjects of this appeal.

In 1995, Parks and plaintiff agreed that Canvasser would help Dr. Gordan Miller gather signatures for three petitions that Miller intended to file to place measures on the ballot for the November 1996 election. Canvasser then reached an agreement with Miller, knowing that Miller had limited funds to pay for signature gathering. As a result, plaintiff was to gather signatures for a total of nine petitions that needed to be submitted to the Secretary of State with the requisite number of signatures by no later than July 5, 1996.

Because of inclement weather, the complexity of the issues in the petitions, the lack of early advertising and competition with other organizations' petitions, it became apparent that Miller's petitions were in danger of falling short of the necessary signatures as the filing deadline approached. Plaintiff informed Parks and Miller that she had concerns about getting enough signatures. The jury could have found from the evidence that Parks told Miller not to worry about any expenses and that he would take care of any amount that exceeded the amount Miller had contracted to pay. Plaintiff began to incur greater expenses to obtain the necessary signatures.

At the same time, the State Employment Department began an audit of Canvasser, investigating whether the signature gatherers hired by plaintiff had been properly designated by Canvasser as independent contractors instead of employees. According to plaintiff's testimony, if the state had determined that the signature gatherers were employees, then payroll taxes would have been owed on approximately a million dollars paid to the gatherers. Also, in late June, Parks left for vacation. He also left monies for Canvasser to pay the signature gatherers. By the time Parks had returned, the efforts to file the petitions and meet the deadline had been successful, but a dispute was brewing over the amount of the monies paid to the gatherers.

On August 12, Parks called plaintiff into his office. Also present were his secretary, Sandra Baker, and his son, Ray Parks. Parks accused plaintiff of not obeying his instructions about keeping accurate records on the signature gatherers, the subject of the state's audit. He told her that she had not been a good manager and that he was firing her. When

plaintiff responded that she would leave immediately, he told her that she should stay until she completed her duties. Plaintiff continued working over the next couple of weeks. On August 23, Parks again called plaintiff into his office. This time, Parks requested that Baker and Claudia Gilmore, Parks' assistant, be present. The jury could find from the evidence that at that meeting, Parks accused plaintiff of "defraud[ing] him of money to pay for Dr. Miller's signatures." Parks discharged plaintiff immediately.

██ Plaintiff argues that Parks' statements about her at the August 23 meeting were false and defamatory and that the trial court erred in granting the *jnov* when it ruled that they were not susceptible of a defamatory meaning. On appeal, Parks does not defend the trial court's reasoning that the statements were not defamatory. A defamatory statement is a false statement that would subject another to

> "hatred, contempt or ridicule * * * [or] tend to diminish the esteem, respect, goodwill or confidence in which [that person] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [that person]." *Farnsworth v. Hyde*, 266 Or 236, 238, 512 P2d 1003 (1973).

The import of Parks' statements to plaintiff in the presence of Baker and Gilmore are subject to differing interpretations. They could be understood as merely claiming that plaintiff had acted without authority when she paid the additional expenses on behalf of Miller, or as imputing dishonesty. In addition, there is testimony that Parks called plaintiff a "crook" on another occasion.[3] He also stated that "she had taken money which did not belong to her" on more than one occasion. Plaintiff testified that, at the conclusion of the August 23 meeting: "it seemed to me that I was being accused of wrongdoing, more or less as a reason to get out from a

---

[3] The trial court submitted only the statements made on August 23 as the gravamen of plaintiff's claim. Defendant argues, "[t]his court's role, therefore, should be limited to determining whether the evidence supports the jury's defamation verdict based on the August 23, 1996 statements alone." While we agree that plaintiff's claim for defamation is based on the statements made on August 23, evidence of what Parks said on other occasions about plaintiff's conduct is probative of what Parks meant to convey on August 23. OEC 401.

responsibility that Mr. Parks had undertaken for the liability, for not just Canvasser Services, but for all of the campaigns." We conclude that whether Parks' statements at the August 23 meeting were defamatory was a question of fact for the jury to decide and that the trial court erred by granting a *jnov* on that ground.

Nonetheless, Parks' statements could be conditionally privileged if they were made to protect his business interests or if they were about a subject of mutual concern to Parks and those to whom the statements were made. *Wattenburg v. United Medical Lab*, 269 Or 377, 380, 525 P2d 113 (1974). If the statements were conditionally privileged, then Parks is immune from liability as a matter of law unless he acted in a way that caused him to lose the privilege. Plaintiff argues that any privilege was lost because of the presence of Baker and Gilmore at the meeting. Parks asserts that both Baker and Gilmore had actual personal dealings with Canvasser and that, because of the extent to which Parks' other companies were enmeshed with Canvasser, his belief that plaintiff had mismanaged his money was a matter of concern to them that would provide a basis for the privilege. The trial court ruled that Parks' statements were conditionally privileged and that there was no evidence from which the jury could conclude that the statements were made "maliciously."

■ Even if Parks' statements were made to others who had a mutual concern, a conditional privilege to utter a defamatory statement

> "may be lost if the speaker does not believe that the statement is true or lacks reasonable grounds to believe that it is true; if it is published for a purpose other than that for which the particular privilege is given; if the publication is made to some person not reasonably believed to be necessary to accomplish the purpose; or if the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose." *Lund v. Arbonne International, Inc.*, 132 Or App 87, 96, 887 P2d 817 (1994).

Plaintiff points to evidence from which the jury could have found that Parks did not believe or lacked reasonable grounds to believe that his accusation made on August 23

was true. Plaintiff testified that Parks had agreed to pay for the additional signatures needed for Miller's petitions, that Parks was fully apprised at all times about the amount of money that was being spent on Miller's petitions, that he had agreed to fund the costs for Miller's petitions and that he had signed the checks for those costs pursuant to his agreement before he left on vacation.

Defendant counters that plaintiff's evidence does not permit the inference that Parks did not believe his statements or lacked reasonable grounds to believe that his statements were true. Defendant relies on our holding in *Bickford v. Tektronix, Inc.,* 116 Or App 547, 842 P2d 432 (1992). In *Bickford*, the defendant employer held a meeting with employees to explain that the plaintiff, a long-term employee, had been fired because of chronic job performance problems. The plaintiff filed a lawsuit in which he claimed that he had been defamed, and the employer defended on the ground that the communication to the other employees was conditionally privileged. At a hearing on the employer's summary judgment motion, the plaintiff argued that, because his employment record contained positive entries about his work performance, it was necessarily inferable that the employer did not have reasonable grounds to believe that the plaintiff had chronic job performance problems. We held that the plaintiff's evidence by itself did not give rise to an inference that the defendant had an improper motive. We said that there had to be evidence that is probative of the declarant's state of mind at the time that the statements were made to demonstrate that the statements were made without a reasonable belief as to their truthfulness. *Bickford*, 116 Or App at 551; *see Lund*, 132 Or App at 96 n 8.

The facts of *Bickford* are inapposite to this case, although the rule of law on which its holding is based applies. Plaintiff must provide some evidence of the mental state of the declarant at the time of the statement. Here, the jury could have found from the evidence that, on August 23, Parks did not have a reasonable belief that plaintiff had defrauded him. The meeting on August 23 had been preceded by events that showed an agreement by Parks to pay for all of Miller's expenses, including leaving monies with plaintiff in late June, monies that the jury could find were to be applied to

Miller's expenses. There is no evidence in the record that plaintiff appropriated those monies for her own use. Under the circumstances, the jury could have reasonably inferred that Parks lost any conditional privilege that could have existed by his accusation of dishonesty. Consequently, we disagree with Parks' argument that the trial court's grant of a *jnov* was correct because the evidence is only susceptible to the conclusion that his statements were conditionally privileged. Because more than one inference could reasonably be drawn from the evidence, the question of Parks' state of belief at the August 23 meeting was for the jury and not for the court to decide. *See Worley v. OPS*, 69 Or App 241, 243, 245-46, 686 P2d 404, *rev den* 298 Or 334 (1984) (holding that the trial court correctly denied the defendant's motions for directed verdict and for *jnov* when the jury could have concluded from the evidence that the defendant knowingly made false statements that the plaintiff was a thief).

Reversed and remanded for entry of judgment on the verdict; otherwise affirmed.