Argued and submitted October 26, 2005, at Hood River Valley High School, Hood River, affirmed February 1, 2006

Neda LEWIS,
*Appellant,*

*v.*

CARSON OIL COMPANY,
an Oregon corporation,
*Respondent.*

0302-01373; A124858

127 P3d 1207

Vicki L. Smith argued the cause for appellant. With her on the brief was Lane Powell PC.

Frank J. Susak argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega and Rosenblum, Judges.

ORTEGA, J.

## ORTEGA, J.

Plaintiff appeals after the trial court's grant of summary judgment to defendant on plaintiff's claims for defamation and intentional infliction of emotional distress. Plaintiff assigns error to three of the trial court's rulings: (1) its grant of summary judgment on her defamation claim, (2) its order striking a portion of her affidavit in opposition to defendant's summary judgment motion, and (3) its grant of summary judgment on her claim for intentional infliction of emotional distress (IIED). We reject the second assignment of error without further discussion, and we affirm the trial court's entry of summary judgment for defendant on the defamation and IIED claims.

██ We affirm on summary judgment only if the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Swisher v. Albertson's, Inc.*, 186 Or App 734, 736, 64 P3d 1212 (2003). The nonmoving party has the burden of producing evidence on any issue raised in the motion as to which that party would have the burden of persuasion at trial. ORCP 47 C. We review the record in the light most favorable to the nonmoving party. *Id.*

Defendant terminated plaintiff's employment for the stated reason of theft of company property, namely, rolls of toilet paper. Plaintiff had worked for defendant for about five months and was a supervisor in its credit department. At the time of her termination, plaintiff was 74 years old and disabled.

A few months before plaintiff's termination, Hunter-Anderson, a long-time employee of defendant with responsibility for maintenance of supplies, began noticing that toilet paper was disappearing from the women's restroom. On a few occasions, she noticed that facial tissue was also missing. Hunter-Anderson began monitoring the toilet paper supplies and marking paper rolls to enable her to verify her belief that the rolls were, in fact, being removed from the premises rather than being used. She also began checking the toilet paper supply when employees left the building after 5:00 p.m. She thus was able to narrow down the number of

employees who could have taken the paper. One day, immediately after plaintiff left the building, Hunter-Anderson determined that three rolls had been removed from the women's restroom. Hunter-Anderson testified that she then went to a third-floor window overlooking the parking lot area, watched plaintiff in the parking lot below, and saw that plaintiff's bag contained two rolls of toilet paper.

■ ■ According to plaintiff, "[a]nyone who worked at [defendant's office] would know that it would be nearly impossible to see something in someone's bag from the third floor to the parking lot" as Hunter-Anderson reported. Plaintiff maintains that she did not take anything from defendant that did not belong to her.

The day after Hunter-Anderson made her observations, she reported the incident to O'Farrell, who is the executive secretary to both Carson, defendant's CEO, and Woodbury, its president. O'Farrell orally reported Hunter-Anderson's findings to Carson, who instructed her to have Hunter-Anderson document the report. Carson then informed Woodbury and discussed the report with him. Carson and Woodbury decided to terminate plaintiff's employment. None of defendant's employees ever asked plaintiff if she had taken toilet paper.

About a week after Hunter-Anderson's oral report, Woodbury terminated plaintiff for theft of toilet paper and facial tissues. Woodbury invited O'Farrell to attend the meeting in which he informed plaintiff that she was terminated because he felt that "it was appropriate to have another female present." Plaintiff, who was upset and shaking as a result of the termination meeting, asked if she would qualify for unemployment benefits. Woodbury told plaintiff that defendant would not contest her eligibility for benefits or inform the Oregon Employment Department of the reason for plaintiff's termination; in Woodbury's notes of the meeting, he stated that if plaintiff decided to bring a claim for wrongful termination, "all avenues would be reconsidered." The reason for termination written on plaintiff's separation form was changed from "for cause" to "without cause."

Plaintiff's alleged theft of toilet paper was discussed by some of defendant's other employees. O'Farrell spoke with

a company vice president regarding Hunter-Anderson's report and the appropriate response. Woodbury spoke with plaintiff's supervisor, Mohr, who was out of the office at the time of plaintiff's termination. Plaintiff also called Mohr to discuss her termination. Mohr in turn discussed plaintiff's termination with Carson, O'Farrell, and Mohr's son, an employee of defendant who reported to plaintiff. Carson, O'Farrell, Woodbury, and Mohr all submitted affidavits stating that they spoke about plaintiff's termination only to protect defendant's business interests. The record contains no admissible evidence of any other discussions by defendant's employees regarding plaintiff's termination, although plaintiff offered evidence that defendant had "a serious problem" with gossip in the workplace.

Plaintiff sued defendant for defamation and IIED, alleging that, after her termination, "defendant's agents and employees told others about the false accusations of theft." Defendant moved for summary judgment on both claims. Defendant conceded, for purposes of its summary judgment motion, that its statements concerning plaintiff constituted defamation *per se*, but it argued that its statements were not actionable because they were subject to a qualified privilege. Defendant also argued that it was not liable for IIED because it did not engage in the sort of outrageous conduct required to support such a claim and because, in any event, it did not intend to cause plaintiff emotional distress. The trial court granted defendant's motion.

On appeal, plaintiff argues that the trial court erred in granting defendant's motion for summary judgment. As to her defamation claim, she contends that there are genuine issues of material fact about whether defendant properly raised a qualified privilege and whether it abused and thus lost its privilege. We disagree. A qualified privilege to make a defamatory statement arises when the statement "is made to protect the interests of the plaintiff's employer or it is on a subject of mutual concern to the defendant and those to whom it is made." *Benassi v. Georgia-Pacific,* 62 Or App 698, 702, 662 P2d 760, *adh'd to as modified on recons,* 63 Or App 672, 667 P2d 532, *rev den,* 295 Or 730 (1983) (citation omitted). Here, defendant properly raised the qualified privilege defense. The Supreme Court has recognized that "employees

and their private employers have a legitimate interest in free communications on work-related matters, especially when reporting actual or suspected wrongdoing." *Wallulis v. Dymowski*, 323 Or 337, 350, 918 P2d 755 (1996). *See also Lund v. Arbonne International, Inc.*, 132 Or App 87, 96, 887 P2d 817 (1994) (affirming summary judgment on former consultant's defamation claim where "the evidence was that the publications were made to and by persons who shared a business interest" in the employer by virtue of their employment and the statements "were on a matter of mutual concern that could affect them all—plaintiff's conduct" as a consultant for the employer). Defendant offered evidence that its discussion of plaintiff's termination occurred within a group of employees who were either involved in the investigation and termination of plaintiff's employment or worked directly with plaintiff in her department. Although plaintiff argues that there could be no proper business reason for telling Mohr's son, a nonmanagement employee, plaintiff herself testified that Mohr's son worked under her supervision in the credit department.

■■ When a defendant properly raises a qualified privilege, the plaintiff has the burden of proving that the defendant lost that privilege. *Walsh v. Consolidated Freightways*, 278 Or 347, 356, 563 P2d 1205 (1977). The privilege is lost if the publisher abuses it. *Benassi*, 62 Or App at 703. Abuse occurs if the publisher disbelieves or lacks reasonable grounds to believe that the defamatory statement is true, if the statement is made for purposes outside the scope of the privilege, if the statement is made to someone who is not reasonably believed to be necessary to accomplish the purpose of the privilege, or if the statement includes defamatory matter that is not reasonably believed to be necessary to accomplish the purpose of the privilege. *Id.*

■ Although plaintiff argues that there was evidence from which a jury could find that defendant abused its qualified privilege, none of that evidence gives rise to a genuine issue of material fact on that point. Plaintiff argues that defendant lost the privilege by repeating the defamatory statements to persons who had no need to know them. Although plaintiff points out that defendant failed to establish that Mohr's son and the vice president did not repeat the

defamatory statements, defendant was only required to establish a qualified privilege as to the statements. Plaintiff had the burden to establish that statements were published and that the qualified privilege was abused. *Wallulis*, 323 Or at 343, 348. *See also* ORCP 47 C ("The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial."). She failed to do so. Because the record shows only that the defamatory matter was published to a small group of employees who were involved in the termination process or worked directly with plaintiff, there was no genuine issue of material fact regarding an abuse of the privilege by unnecessary publication.

■ Plaintiff further contends that defendant abused its privilege by publishing statements without a belief or reasonable ground for belief in the truth of the defamatory matter, *i.e.*, that she took toilet paper. Again, the record does not show any genuine issue of material fact regarding the issue. Although plaintiff testified that defendant's employees "would know" that it would be "nearly impossible" for Hunter-Anderson to have seen from the third floor window to the parking lot, Hunter-Anderson testified that she did, in fact, see plaintiff with the toilet paper and that she reported as much. There is no evidence in the record that Hunter-Anderson had any motive to fabricate a report against plaintiff. No reasonable juror could find on plaintiff's testimony alone that defendant's employees disbelieved or lacked a reasonable grounds to believe Hunter-Anderson's report of her actions and observations, which included marking toilet paper and monitoring when the rolls disappeared from the restroom. Whether or not Hunter-Anderson was mistaken, as plaintiff claims, there is no material issue of fact as to whether defendant lacked a reasonable basis for believing the report.

■ Plaintiff also argues that defendant lost its qualified privilege by acting with an improper purpose; specifically, she argues that defendant accused her of stealing toilet paper to cover up its real reason for terminating her—her age and disability. As evidence, she points to the fact that the reason for termination on her separation papers was changed from "with cause" to "without cause." However, the record shows

that the change was made for plaintiff's benefit. During the termination meeting, plaintiff herself raised the issue of her eligibility for unemployment insurance benefits. Woodbury then promised that defendant would not inform the Oregon Employment Department of the reason for plaintiff's termination and would not contest her eligibility for benefits.

Plaintiff argues that defendant must have had a wrongful motive for terminating her, because Woodbury stated that, if plaintiff sued defendant for wrongful discharge, it would reconsider its position on her eligibility for unemployment. Neither Woodbury's agreement not to contest plaintiff's right to unemployment insurance benefits nor defendant's threat to reveal its stated reason for plaintiff's termination constitutes evidence that defendant had improper purposes or disbelieved Hunter-Anderson's report that plaintiff had stolen toilet paper from defendant. Further, no evidence whatsoever was presented to suggest that the "real reason" behind the termination was plaintiff's age or disability. Plaintiff thus failed to establish that defendant abused its qualified privilege. The trial court did not err by granting defendant's motion for summary judgment on plaintiff's defamation claim.

We turn to plaintiff's intentional infliction of emotional distress claim. Plaintiff argues that defendant engaged in outrageous conduct by publishing defamatory statements about her and by failing to investigate Hunter-Anderson's allegations of theft. Our analysis of the defamation claim disposes of the first argument, and we conclude that defendant's failure to investigate Hunter-Anderson's report did not constitute "an extraordinary transgression of the bounds of socially tolerable conduct" as required for an IIED claim. *See McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841 (1995) (quoting *Sheets v. Knight*, 308 Or 220, 236, 779 P2d 1000 (1989) (identifying elements of the claim)). The trial court correctly entered summary judgment for defendant on plaintiff's intentional infliction of emotional distress claim.

Affirmed.